# SUPREME COURT OF THE UNITED STATES

## TORREY DALE GRADY *v*. NORTH CAROLINA

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF NORTH CAROLINA

No. 14–593. Decided March 30, 2015

PER CURIAM.

Petitioner Torrey Dale Grady was convicted in North Carolina trial courts of a second degree sexual offense in 1997 and of taking indecent liberties with a child in 2006. After serving his sentence for the latter crime, Grady was ordered to appear in New Hanover County Superior Court for a hearing to determine whether he should be subjected to satellite-based monitoring (SBM) as a recidivist sex offender. See N. C. Gen. Stat. Ann. §§14–208.40(a)(1), 14–208.40B (2013). Grady did not dispute that his prior convictions rendered him a recidivist under the relevant North Carolina statutes. He argued, however, that the monitoring program—under which he would be forced to wear tracking devices at all times—would violate his Fourth Amendment right to be free from unreasonable searches and seizures. Unpersuaded, the trial court ordered Grady to enroll in the program and be monitored for the rest of his life. Record in No. COA13-958 (N. C. App.), pp. 3–4, 18–22.

Grady renewed his Fourth Amendment challenge on appeal, relying on this Court's decision in *United States* v. *Jones*, 565 U. S. \_\_\_ (2012). In that case, this Court held that police officers had engaged in a "search" within the meaning of the Fourth Amendment when they installed and monitored a Global Positioning System (GPS) tracking device on a suspect's car. The North Carolina Court of Appeals rejected Grady's argument, concluding that it was foreclosed by one of its earlier decisions. App. to Pet. for Cert. 5a–7a. In that decision, coincidentally named *State*

v. *Jones*, the court had said:

> "Defendant essentially argues that if affixing a GPS to an individual's vehicle constitutes a search of the individual, then the arguably more intrusive act of affixing an ankle bracelet to an individual must constitute a search of the individual as well. We disagree. The context presented in the instant case—which involves a civil SBM proceeding—is readily distinguishable from that presented in [*United States* v.] *Jones*, where the Court considered the propriety of a search in the context of a motion to suppress evidence. We conclude, therefore, that the specific holding in [*United States* v.] *Jones* does not control in the case *sub judice*." ___ N. C. App. ___, ___, 750 S. E. 2d 883, 886 (2013).

The court in Grady's case held itself bound by this reasoning and accordingly rejected his Fourth Amendment challenge. App. to Pet. for Cert. 6a–7a. The North Carolina Supreme Court in turn summarily dismissed Grady's appeal and denied his petition for discretionary review. 367 N. C. 523, 762 S. E. 2d 460 (2014). Grady now asks us to reverse these decisions.*

The only explanation provided below for the rejection of Grady's challenge is the quoted passage from *State* v. *Jones*. And the only theory we discern in that passage is that the State's system of nonconsensual satellite-based monitoring does not entail a search within the meaning of the Fourth Amendment. That theory is inconsistent with

---

* Grady aims his petition at the decisions of both North Carolina appellate courts. See Pet. for Cert. 1. Because we treat the North Carolina Supreme Court's dismissal of an appeal for lack of a substantial constitutional question as a decision on the merits, it is that court's judgment, rather than the judgment of the Court of Appeals, that is subject to our review under 28 U. S. C. §1257(a). See *R. J. Reynolds Tobacco Co.* v. *Durham County*, 479 U. S. 130, 138–139 (1986).

Per Curiam

this Court's precedents.

In *United States* v. *Jones*, we held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" 565 U. S., at ___ (slip op., at 3) (footnote omitted). We stressed the importance of the fact that the Government had "physically occupied private property for the purpose of obtaining information." *Id.,* at ___ (slip op., at 4). Under such circumstances, it was not necessary to inquire about the target's expectation of privacy in his vehicle's movements in order to determine if a Fourth Amendment search had occurred. "Where, as here, the Government obtains information by physically intruding on a constitutionally protected area, such a search has undoubtedly occurred." *Id.,* at ___, n. 3 (slip op., at 6, n. 3).

We reaffirmed this principle in *Florida* v. *Jardines*, 569 U. S. ___, ___–___ (2013) (slip op., at 3–4), where we held that having a drug-sniffing dog nose around a suspect's front porch was a search, because police had "gathered . . . information by physically entering and occupying the [curtilage of the house] to engage in conduct not explicitly or implicitly permitted by the homeowner." See also *id.,* at ___ (slip op., at 9) (a search occurs "when the government gains evidence by physically intruding on constitutionally protected areas"). In light of these decisions, it follows that a State also conducts a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements.

In concluding otherwise, the North Carolina Court of Appeals apparently placed decisive weight on the fact that the State's monitoring program is civil in nature. See *Jones*, ___ N. C. App., at ___, 750 S. E. 2d, at 886 ("the instant case . . . involves a civil SBM proceeding"). "It is well settled," however, "that the Fourth Amendment's protection extends beyond the sphere of criminal investi-

gations," *Ontario* v. *Quon*, 560 U. S. 746, 755 (2010), and the government's purpose in collecting information does not control whether the method of collection constitutes a search. A building inspector who enters a home simply to ensure compliance with civil safety regulations has undoubtedly conducted a search under the Fourth Amendment. See *Camara* v. *Municipal Court of City and County of San Francisco*, 387 U. S. 523, 534 (1967) (housing inspections are "administrative searches" that must comply with the Fourth Amendment).

In its brief in opposition to certiorari, the State faults Grady for failing to introduce "evidence about the State's implementation of the SBM program or what information, if any, it currently obtains through the monitoring process." Brief in Opposition 11. Without evidence that it is acting to obtain information, the State argues, "there is no basis upon which this Court can determine whether North Carolina conducts a 'search' of an offender enrolled in its SBM program." *Ibid.* (citing *Jones*, 565 U. S., at ___, n. 5 (slip op., at 7, n. 5) (noting that a government intrusion is not a search unless "done to obtain information")). In other words, the State argues that we cannot be sure its program for satellite-based *monitoring* of sex offenders collects any information. If the very name of the program does not suffice to rebut this contention, the text of the statute surely does:

> "The satellite-based monitoring program shall use a system that provides all of the following:
> "(1) Time-correlated and continuous tracking of the geographic location of the subject . . . .
> "(2) Reporting of subject's violations of prescriptive and proscriptive schedule or location requirements." N. C. Gen. Stat. Ann. §14–208.40(c).

The State's program is plainly designed to obtain information. And since it does so by physically intruding on a

Per Curiam

subject's body, it effects a Fourth Amendment search.

That conclusion, however, does not decide the ultimate question of the program's constitutionality. The Fourth Amendment prohibits only *unreasonable* searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations. See, *e.g., Samson* v. *California*, 547 U. S. 843 (2006) (suspicionless search of parolee was reasonable); *Vernonia School Dist. 47J* v. *Acton*, 515 U. S. 646 (1995) (random drug testing of student athletes was reasonable). The North Carolina courts did not examine whether the State's monitoring program is reasonable—when properly viewed as a search—and we will not do so in the first instance.

The petition for certiorari is granted, the judgment of the Supreme Court of North Carolina is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*