STROUD, Judge, concurring.
I concur in the majority opinion fully on all issues except the last, as to the SBM order. On this issue, I concur in the result only. I write separately to note my concern regarding the trial court's failure to consider the Grady issues arising from the SBM order. But I will not address the substance of the issue or dissent primarily because a hearing to consider "the reasonableness of [the]
*361 search" depends upon "the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Grady v. North Carolina , --- U.S. ----, ----, 135 S.Ct. 1368, 1371, 191 L.Ed. 2d 459, 462 (2015). The reasonableness of the search and the totality of the circumstances under which the SBM will operate will depend necessarily upon the defendant's circumstances and the operation of SBM at the time the monitoring will be done of the defendant. Attempting to determine the reasonableness of satellite based monitoring which will not take effect for nearly 50 years and possibly as long as 66 years would be an exercise in futility.
At the time of his conviction and sentencing, defendant was almost 32 years old. He was sentenced to two consecutive terms of imprisonment of a minimum of 280 months and a maximum of 396 months. In other words, he will be in prison for at least 46 years, 7 months or as much as 66 years. If he is released from prison upon completion of his minimum sentences, he will be nearly 79 years old; if he is released after completing his maximum sentences, he will be nearly 98 years old.
If the trial court were to conduct a Grady hearing, it would need to consider evidence presented about various factors, such as "the nature of the privacy interest upon which the search ... intrudes"; "the character of the intrusion that is complained of" and the type of private *613 information the search discloses; and "the nature and immediacy of the governmental concern at issue ..., and the efficacy of [government action] for meeting it." Vernonia Sch. Dist. 47J v. Acton , 515 U.S. 646, 654, 658, 660, 115 S.Ct. 2386, 2391, 2393, 2394, 132 L.Ed. 2d 564, 575, 577-78, 579 (1995). One type of evidence at this type of hearing would be information regarding the size and intrusiveness of the monitoring device as well as how it functions to monitor the defendant and how the device is maintained. Even if a court were to consider only the facts relevant to the monitoring device-ignoring whether a 98 year old man presents the same potential threats to society as a 32 year old man-it is simply impossible to predict what sort of satellite-based monitoring technology will be used in 2063, or in 2083, or anywhere in between. The SBM technology as it exists now is irrelevant to this defendant. The changes in technology in the last 47 years have been tremendous. The cell phone is just one example of these changes. Wireless phones existed only in science fiction 47 years ago; cell phones were not invented until 1973. Cell phones used to be large, bulky devices that weighed several pounds. Even just a few years ago, cell phones had one function: phone calls. Cell phones now weigh a few ounces and have more computing and data storage capability than the largest and most advanced computers in the world of 47 years ago. And 66 years ago, in 1951, the first commercial computer produced in the United States, the UNIVAC, debuted. It weighed about 16,000 pounds and took up about 382 square feet of floor space; its computing speed was glacial compared to the most basic cell phone available today.
The United States Supreme Court has recognized in recent cases the need to consider how modern technology actually works as part of analysis of the reasonableness of searches. See Riley v. California , --- U.S. ----, ---- - ----, 134 S.Ct. 2473, 2489-90, 189 L.Ed. 2d 430, 446-47 (2014) ("One of the most notable distinguishing features of modern cell phones is their immense storage capacity. Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy. ... But the possible intrusion on privacy is not physically limited in the same way when it comes to cell phones. The current top-selling smart phone has a standard capacity of 16 gigabytes (and is available with up to 64 gigabytes). Sixteen gigabytes translates to millions of pages of text, thousands of pictures, or hundreds of videos. .... The storage capacity of cell phones has several interrelated consequences for privacy. First, a cell phone collects in one place many distinct types of information ... that reveal much more in combination than any isolated record. Second, a cell phone's capacity allows even just one type of information to convey far more than *614 previously possible. ... Third, the data on a phone can date *362 back to the purchase of the phone, or even earlier. ... Finally, there is an element of pervasiveness that characterizes cell phones but not physical records." (Citations omitted)). And again, the technology of SBM is just one part of the analysis of the "totality of the circumstances" which the trial court must undertake based on Grady .
I would encourage the General Assembly to consider addressing the absolute futility of having trial courts conduct SBM hearings immediately upon sentencing offenders who are to serve extremely long sentences. Holding this type of hearing so many years before any possible release is simply a waste of time and resources for prosecutors, defense counsel, and the trial courts. A hearing to consider SBM held shortly before a convicted sex offender is to be released upon completion of his sentences would allow the trial court to make a meaningful assessment of SBM based upon technology available and the offender's circumstances at that time.
I therefore concur with the majority opinion on all issues except the last. On that last issue-relating to the SBM order-I concur only in the result.