DILLON, Judge, dissenting.
I agree with the majority that we are compelled to vacate the order of the trial court requiring Defendant to submit to satellite-based monitoring ("SBM") based on two cases recently decided by panels of our Court, State v. Griffin , --- N.C. App. ----, ----, --- S.E.2d ----, ----, 2018 N.C. App. LEXIS 792 (2018), decided just this month, and State v. Grady , --- N.C. App. ----, ----, --- S.E.2d ----, ----, 2018 N.C. App. LEXIS 460 (2018) (hereinafter "Grady II "), decided this past May. Based on these cases, we are compelled to conclude that the State failed to meet its burden of proving the efficacy of SBM tracking to deter Defendant from reoffending, and, accordingly, failed to prove that SBM tracking of Defendant would constitute a "reasonable" search.
I believe, however, that the holdings in Griffin and Grady II have heightened the burden on the State to show the reasonableness of an SBM search from what was understood to be its burden at the time of the call-back hearing in this case. Therefore, I disagree with the majority's mandate to reverse the trial court's order. I vote to vacate the order and to remand the matter for a new Grady hearing. At this hearing the State would be afforded the opportunity to meet its new heightened burden, and the trial court would enter findings of fact and conclusions of law regarding the reasonableness of the search based on the evidence presented.
I. Discussion
In 2006, our General Assembly made the policy decision to establish a program requiring that certain sex offenders be subject to satellite-based monitoring. In 2010, our Supreme Court held the SBM program to be civil in nature and, therefore, could be applied to those who committed covered sex offenses prior to 2006. State v. Bowditch , 364 N.C. 335, 352, 700 S.E.2d 1, 13 (2010).
In 2015, the United States Supreme Court held that, though our SBM program may be civil, attaching "a device to [a sex offender's] body, without consent, for the purpose of tracking that individual's movements" amounts to a "search" under the Fourth Amendment. Grady v. North Carolina , --- U.S. ----, ----, 135 S. Ct. 1368, 1370 (2015). Therefore, the Court held, a trial court must determine that a "search" is reasonable before ordering a sex offender to wear a monitor under our SBM program. Id. at ----, 135 S. Ct. at 1371 (stating that "[t]he Fourth Amendment prohibits only unreasonable searches").
Importantly, the United States Supreme Court directed that our trial courts determine reasonableness based on "the totality of the circumstances ," which would include "the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. (emphasis added).
Since Grady , we have held that the burden lies with the State to demonstrate the reasonableness of a proposed SBM search. See State v. Greene , --- N.C. App. ----, ----, 806 S.E.2d 343, 345 (2017). Accordingly, following Grady , the State has had the burden in each case to show that SBM would be reasonable based on the totality of the circumstances.
Part of the "totality of the circumstances" calculus includes whether the offender poses a threat to reoffend. Also, and more important to the issue raised in Griffin and Grady II , part of the calculus includes whether an SBM search would be effective in furthering the State interest in deterring the offender from reoffending or from loitering in locations where he is not allowed to be. See Bowditch , 364 N.C. at 351, 700 S.E.2d at 12 (recognizing that "[t]he SBM program is concerned with protecting the public against recidivist tendencies of convicted sex offenders").
Based on Griffin and its interpretation of Grady II , the State fails to meet its burden of showing reasonableness based on the totality of the circumstances where it fails to produce any empirical data or expert testimony showing that an SBM search would be effective in reducing the likelihood that the offender would reoffend. I believe that, prior to Griffin and Grady II , it was reasonable for the State to assume that testimony explaining how an SBM search allows law enforcement to track the movements of an offender was some evidence to support a finding that the offender would be less likely to reoffend if he was subjected to an SBM search. I conclude that it is within the common experience that one being watched is less likely to offend than one not being watched. Expert testimony and empirical studies are not required for a trial judge, as factfinder, to make this finding. Indeed, it is common sense that thieves are less likely to strike if they are aware that security cameras are present; and children are less likely to go where they are not supposed to go if they know that their parents are tracking their movements through the "Find My iPhone" app.
It is indeed a government interest to prevent recidivism among sex offenders. And SBM monitoring is not 100 percent reliable to prevent a sex offender from reoffending or traveling where he is not supposed to be. Certainly, a security camera cannot descend from its mount to prevent a robbery, and an iPhone cannot prevent a minor from going where his parents have forbidden him to go. But it is also a government interest to lessen the likelihood that an offender will reoffend. I believe that a factfinder, without the aid of empirical data or expert testimony, can find that a sex offender is less likely to reoffend or go where he is not supposed to go if he knows his movements are being watched. By way of example, if the trial court found that an offender is tempted when he is around children and that the offender has been ordered not to loiter near a schoolyard, the trial court, as factfinder, could find that the offender would be less likely to loiter near a schoolyard, and therefore less likely to be tempted to reoffend, if he knew that his location was being monitored.
I conclude that it would have been reasonable, prior to Griffin and Grady II , to believe that a finding that an SBM search, by its "nature,"[2] is effective in reducing the likelihood of recidivism, when coupled with other findings, could support a trial court's ultimate conclusion that an SBM search was reasonable based on the "totality of the circumstances," notwithstanding that the State did not offer empirical data, expert testimony, and the like to prove the efficacy of an SBM search. Indeed, our Court, in a 2009 case where no empirical data or expert testimony appeared to be offered, recognized that "SBM provisions could have a deterrent effect. Presumably, sex offenders would be less likely to repeat offenses since they would be aware their location could be tracked and it would be easier to catch them." State v. Bare , 197 N.C. App. 461, 476, 677 S.E.2d 518, 529 (2009). Also, our Supreme Court has suggested that an SBM search has a deterrent effect. See Bowditch , 364 N.C. at 363, 700 S.E.2d at 19 (n. 14). Further, our Court has held that, in the context of a traffic checkpoint, a trial court's conclusion that a Fourth Amendment seizure was reasonable is supported, in part, by a finding that a traffic checkpoint "deter[red] driver's license violations" and that this "deterrence goal was a reasonable one," where that finding was based solely on officer testimony[3] and not on any expert testimony that checkpoints had some deterrent effect. State v. Jarrett , 203 N.C. App. 675, 679-80, 692 S.E.2d 420, 425 (2010).
In any event, since the "Grady reasonableness hearing" in this matter, our Court decided Griffin and Grady II . In Grady II , our Court held that the State had failed to meet its burden of proving that an SBM search would be reasonable in that case. Grady II , --- N.C. App. at ----, --- S.E.2d at ----, 2018 LEXIS at *22. The Grady II Court based its conclusion on its determination that "the State failed to present any evidence of its need to monitor defendant, or the procedures actually used to conduct such monitoring in unsupervised cases." Id . It did not seem to base its ultimate holding on the State's failure to produce empirical studies or the like to show the efficacy of SBM tracking, but rather this failure was just one part of the "totality of the circumstances" calculus:
At the time of defendant's remand hearing, the SBM program had been in effect for approximately ten years. However, the State failed to present any evidence of its efficacy in furtherance of the State's undeniably legitimate interests. The State conceded this point ... during oral arguments before this Court.
Defendant, however, presented multiple reports authored by the State and federal governments rebutting the widely held assumption that sex offenders recidivate at higher rates than other groups. ... Here, we are compelled to conclude that the State failed to carry its burden.
Grady II , --- N.C. App. at ----, --- S.E.2d at ----, 2018 LEXIS at *20 (emphasis added). Regarding the first half of the above quote, I conclude that the Court is merely pointing out that the State failed to put forth any empirical data or expert testimony which showed the efficacy of an SBM search, a point that was conceded by the State. The Court was not making any specific holding. Regarding the second half of the quote, I do not see how the defendant's evidence as described was relevant in determining whether an SBM search of Mr. Grady would be reasonable; the evidence did not suggest that Mr. Grady was not a threat to recidivate. Rather, the evidence merely suggested offenders of certain non-sex crimes would be just as likely to recidivate as Mr. Grady. Whether to focus SBM searches on sex offenders and not, for instance, bank robbers is a policy decision to be made by our General Assembly, and not the Courts. A search of Mr. Grady does not become less reasonable just because bank robbers also recidivate and should be searched as well.
In any event, three months after Grady II , our Court in Griffin held that, even though the State offered evidence that an SBM search tracked Mr. Griffin's movements, the State automatically lost because it "presented no evidence that the SBM program is effective to serve the State's interest in protecting the public against sex offenders[.]" Griffin , --- N.C. App. at ----, --- S.E.2d at ----, 2018 LEXIS at *14. That is, Griffin held that the attempt to show the reasonableness of an SBM search based on the "totality of the circumstances" automatically failed because the State failed to bring in an expert witness or produce a study which showed that offenders would be less likely to reoffend or go to locations where they were not allowed to go if they knew that there movements were being watched. Id.
In the present case, there are factors in the "totality of the circumstances" calculus which tend towards reasonableness which were not present in either Griffin or Grady II . For instance, the defendants in those cases committed their offenses prior to 2006, when the General Assembly enacted the SBM law. Here, Defendant did not commit his offense until after the General Assembly enacted the SBM law. However, we are compelled by Griffin and Grady II to conclude that the State's proof in this case automatically fails the "totality of the circumstances" test because of its failure to offer any empirical data or the like to prove the efficacy of an SBM search to lessen the likelihood of recidivism.
But since the State could not have known about Griffin and Grady II at the time of the hearing in the present case, I believe it is only fair to remand this matter to allow the State the opportunity to present expert testimony or empirical studies to show that an offender is less likely to reoffend if he knows his movements are being tracked.

The "nature" of the search is part of the "totality of the circumstances" calculus. Grady , --- U.S. at ----, 135 S. Ct. at 1371.

The opinion states that the officer "was the only witness to testify[.]" State v. Jarrett , 203 N.C. App. at 676, 692 S.E.2d at 423.