DAVIS, Judge.
Fred Dravis ("Defendant") appeals from the trial court's order requiring him to submit to satellite-based monitoring ("SBM") for a period of five years. Because prior decisions from this Court mandate the conclusion that the State failed to meet its burden of showing that the imposition of SBM was a reasonable search under the Fourth Amendment as to Defendant, we reverse.
Factual and Procedural Background
On 27 April 2017, Defendant sat next to a 69-year-old woman at a 3D screening of The Jungle Book at the IMAX movie theater at Marbles Kids Museum in Raleigh, North Carolina. Two children were also present in the movie theater. All of the attendees in the theater were wearing 3D glasses throughout the movie.
At some point during the movie, Defendant "reached over and touched [the woman next to him] on her thigh area." She looked over at him and saw that he was "staring at her ...." Because it appeared that Defendant was masturbating, the woman's husband "alerted the employees at the theater." A theater employee walked over to Defendant's seat and observed that "his pants [were] fully undone" and that he "was actively masturbating with his penis exposed."
On 26 July 2016, Defendant was indicted for felony indecent exposure, misdemeanor sexual battery, and misdemeanor indecent exposure. On 14 December 2016, Defendant pled guilty to felony indecent exposure before the Honorable Reuben F. Young in Wake County Superior Court. That same day, the trial court sentenced Defendant to 7 to 18 months imprisonment. Defendant was also required to register as a sex offender for 30 years.
On 7 July 2017, a hearing was held to determine whether Defendant met the statutory criteria for enrollment in SBM. The State presented testimony from the prosecutor in Defendant's criminal case, Defendant's post-release supervision officer, and an officer with the Raleigh Police Department. The State also provided evidence that based on his STATIC-99 assessment Defendant posed a "well above average risk" of recidivism. The State submitted a "Memorandum In Support of the Reasonableness of Satellite Based Monitoring" to the trial court prior to the hearing.
Defendant's counsel opposed the imposition of SBM on the grounds that (1) his offense did not involve the "physical, mental or sexual abuse of a child[;]" and (2) the application of SBM to Defendant would constitute an unreasonable search both under the Fourth Amendment and under Article I, Section 20 of the North Carolina Constitution. Defendant also filed a "Motion to Dismiss State's Petition for Satellite-Based Monitoring and to Declare Satellite-Based Monitoring Unconstitutional."
On 7 July 2017, the trial court entered an order (the "SBM Order") requiring Defendant to enroll in SBM for a period of five years. Defendant gave notice of appeal to this Court.
Analysis
Defendant argues initially that the crime for which he was convicted did not qualify him for enrollment in the SBM program because his offense did not involve the physical, mental, or sexual abuse of a minor. In the alternative, he contends that the State presented insufficient evidence that SBM constituted a reasonable search under the Fourth Amendment in light of the United States Supreme Court's decision in Grady v. North Carolina , --- U.S. ----, 135 S. Ct. 1368, 191 L.Ed. 2d 459 (2015) (hereinafter "Grady I ").[1]
We need not determine whether Defendant was statutorily eligible for SBM because even assuming, without deciding, that the trial court properly determined his eligibility, we agree with Defendant's alternative contention that the State failed to show that SBM constituted a reasonable search of him under the Fourth Amendment. Accordingly, the trial court erred by imposing SBM upon him.
The United States Supreme Court held in Grady I that North Carolina's SBM program constitutes a search for purposes of the Fourth Amendment. Id. at ----, 135 S. Ct. at 1371, 191 L.Ed. 2d at 462. As a result, "North Carolina courts must first examine whether the State's monitoring program is reasonable-when properly viewed as a search-before subjecting a defendant to its enrollment." State v. Greene , --- N.C. App. ----, ----, 806 S.E.2d 343, 344 (2017) (citation and quotation marks omitted). "This reasonableness inquiry requires the court to analyze the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. at ----, 806 S.E.2d at 344 (citation and quotation marks omitted).
In Greene , this Court determined that the State had failed to present sufficient evidence showing the reasonableness of SBM as to the defendant in that case under the Fourth Amendment. Id. at ----, 806 S.E.2d at 344. The State conceded its error and acknowledged in its appellate brief that its evidence was "too scant to satisfy its burden under the requirements of Grady ." Id. at ----, 806 S.E.2d at 345. We held not only that the trial court's SBM order was improper but also that the State was not entitled to a "second bite at the apple" in terms of a new SBM hearing. See id. at ----, 806 S.E.2d at 345.
In State v. Grady , --- N.C. App. ----, --- S.E.2d ---- (filed May 15, 2018) (No. COA17-12 ) (hereinafter "Grady II "),[2] this Court recently reviewed for the first time the validity of an SBM order that expressly sought to comply with the United States Supreme Court's mandate in Grady I . In that case, the trial court conducted an SBM hearing during which the State presented testimony from a probation officer who described the manner in which the defendant's ankle monitor would impact his everyday life and track his movements. The State also filed a "Memorandum In Support of the Reasonableness of Satellite Based Monitoring" that "offered arguments about the dangers of recidivism and the State's interest in protecting the public from sex offenders." Id. at ----, --- S.E.2d at ----, slip op. at 3, 7. The State's arguments in its memorandum consisted of references to case law from other jurisdictions and did not present statistics, expert testimony, or other comparable evidence regarding the efficacy of the SBM program in North Carolina. See id. at ----, --- S.E.2d at ----, slip op. at 3, 7, 19-20. In concluding that the imposition of SBM was reasonable, the trial court "heavily relied" on a decision from another jurisdiction where the court "upheld lifetime GPS monitoring ...." Id. at ----, --- S.E.2d at ----, slip op. at 17.
On appeal, we held that Grady I required the trial court to look at "the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. at ----, --- S.E.2d at ----, slip op. at 5 (citing Grady I , --- U.S. at ----, 135 S. Ct. at 1371, 191 L.Ed. 2d at 463 ). We concluded that the State had failed to present sufficient evidence to demonstrate that SBM constituted a reasonable search in this case, stating as follows:
[H]ere, the State failed to present any evidence concerning its specific interest in monitoring defendant, or of the general procedures used to monitor unsupervised offenders. Instead, the State submitted copies of the two sex offense judgments and defendant's criminal record, arguing that defendant himself was "Exhibit Number 1" of SBM's success in deterring recidivists, because "since he's been monitored, guess what: He hasn't recommitted, he hasn't been charged with another sex offense." However, Officer Pace, the State's sole witness, testified that the [electronic monitoring device] cannot actually prevent an offense from occurring. And although knowledgeable about the [electronic monitoring device] and monitoring supervised offenders, Officer Pace was unaware of the procedures used to monitor unsupervised offenders such as defendant, "because he doesn't deal with those" cases. "People out of Raleigh" monitor unsupervised offenders, and Officer Pace did not know "their requirements for checking their system."
....
At the time of defendant's remand hearing, the SBM program had been in effect for approximately ten years. However, the State failed to present any evidence of its efficacy in furtherance of the State's undeniably legitimate interests. The State conceded this point on 8 August 2017 during oral arguments before this Court. Defendant, however, presented multiple reports authored by the State and federal governments rebutting the widely held assumption that sex offenders recidivate at higher rates than other groups. Although the State faulted defendant for presenting statistics about supervised offenders, the State bears the burden of proving reasonableness at Grady hearings. Here, we are compelled to conclude that the State failed to carry its burden.
Id. at ----, --- S.E.2d at ----, slip op. at 18-20 (internal citation omitted).
Thus, because the State failed to present evidence that (1) SBM was an effective remedy in North Carolina to protect the public from recidivism by sex offenders; and (2) the defendant posed a "current threat of reoffending" such that SBM was necessary, we determined that the trial court had erred by finding the imposition of SBM in that case to be reasonable under the Fourth Amendment. Id. at ----, --- S.E.2d at ----, slip op. at 16-21.
This Court recently applied Grady II in State v. Griffin , --- N.C. App. ----, --- S.E.2d ---- (August 7, 2018) (No. COA17-386). In that case, the defendant pled guilty in 2004 to a first-degree sex offense with a child who lived in his household and was released from prison eleven years later. In 2015, the trial court held a "bring-back" hearing to determine whether the defendant was eligible for SBM. During this hearing, the State offered evidence that the defendant had presented a "moderate-low" risk of recidivism on his STATIC-99 assessment. Id. at ----, --- S.E.2d at ----, slip op. at 3. In addition, the defendant's probation officer testified that although the defendant had not completed the sex offender treatment that had been ordered he had not committed any new criminal offenses or violated the terms of his probation since being released from prison. Furthermore, at the SBM hearing, the probation officer described the "physical dimensions of the SBM tracking device, how it is worn, and its general function." Id. at ----, --- S.E.2d at ----, slip op. at 3. The State also submitted to the trial court a "Memorandum in Support of Reasonableness of Satellite Based Monitoring" in which it "cited only other court decisions, not evidence, and it did not attach empirical or statistical reports." Id. at ----, --- S.E.2d at ----, slip op. at 10. The trial court determined that the State's evidence coupled with the fact that the defendant had held a "position of trust" with the victim was sufficient to warrant the imposition of SBM for a period of thirty years. Id. at ----, --- S.E.2d at ----, slip op. at 4.
On appeal, we noted that the trial court had made no findings reflecting "whether [it] determined that Defendant's betrayal of trust or failure to complete or participate in [the sex offender treatment program] increased his likelihood of recidivism." Id. at ----, --- S.E.2d at ----, slip op. at 13. In determining whether the State had presented sufficient evidence of the reasonableness of SBM, we stated that "[d]ecisions from other jurisdictions ... holding that SBM is generally regarded as effective in protecting the public from sex offenders are not persuasive in light of this Court's binding decision in Grady II that the State must present some evidence to carry its burden of proving that SBM actually serves that governmental interest." Id. at ----, --- S.E.2d at ----, slip op. at 11. Thus, we reversed the trial court's SBM order because the State had failed to present sufficient evidence as to "the efficacy of the SBM program" that would support a finding that the warrantless search was reasonable under the Fourth Amendment and did not remand the case for a new SBM hearing. Id. at ----, --- S.E.2d at ----, slip op. at 10.
In the present case, the trial court made the following oral findings at the close of the SBM hearing on the Fourth Amendment issue:
THE COURT: Well, the court at this time will find that not only based on what his prior convictions are but also the testimony with regard to other acts of which this defendant had been involved in that the defendant's participation in the satellite-based monitoring program is found to be reasonable.
The court further finds, also, that the satellite-based monitoring is not so intrusive, but also finds that it is in the interest of public safety that he also be placed on satellite-based monitoring as well.
The trial court did not make any written findings regarding the reasonableness of the search. Based on Grady II and Griffin , we hold that the court's conclusory findings do not demonstrate that the trial court appropriately considered the totality of the relevant circumstances in determining that SBM was reasonable. Indeed, the court lacked the ability to do so given that-as in Grady II and Griffin -the State failed to meet its burden of presenting evidence as to the efficacy of North Carolina's SBM program.
During the SBM hearing, the State presented evidence from a probation officer regarding the manner in which the ankle monitor will track Defendant's movement. However, the State presented no evidence demonstrating that North Carolina's SBM program is an effective remedy to protect the public from sex offenders. Additionally, the State presented a "Memorandum in Support of the Reasonableness of Satellite Based Monitoring" in which it cited cases from other jurisdictions that have upheld SBM. As in Grady II and Griffin , however, this memorandum makes no reference to statistics, studies, or other comparable evidence that discusses the efficacy of SBM in North Carolina. Nor does it discuss any differences between North Carolina's program and the SBM programs in other states.
As we stated in Griffin , "neither anecdote, common sense, nor logic, in a vacuum, is sufficient to carry the State's burden of proof." Griffin , --- N.C. App. at ----, --- S.E.2d at ----, slip op. at 10 (citation omitted). Because the State presented insufficient evidence to meet the requirements of Grady II and Griffin , the State is not entitled to a remand for the purpose of giving it a "second bite at the apple." See Griffin , --- N.C. App. at ----, --- S.E.2d at ----, slip op. at 14 (reversing SBM order without remand where "the State failed to present any evidence that SBM is effective to protect the public from sex offenders"); Grady II , --- N.C. App. at ----, --- S.E.2d at ----, slip op. at 20 (declining to remand because "the State will have only one opportunity to prove that SBM is a reasonable search of the defendant" (citation omitted) ); Greene , --- N.C. App. at ----, 806 S.E.2d at 345 (holding that "a case for satellite-based monitoring is the State's to make" and reversing order denying Defendant's motion to dismiss application for SBM).
We are bound by our decisions in Grady II and Griffin . See In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Accordingly, we reverse the trial court's SBM Order.[3]
Conclusion
For the reasons stated above, we reverse the trial court's 7 July 2017 order.
REVERSED.
Report per Rule 30(e).
Judge INMAN concurs.
Judge DILLON concurs in result.

Defendant similarly argues that the imposition of SBM violated his rights under the North Carolina Constitution.

Grady II was an appeal from the trial court's SBM order that was entered on remand from the United States Supreme Court's ruling in Grady I .

Based on our holding, we need not address Defendant's argument that the trial court's SBM order also violated the North Carolina Constitution.