IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-1077-2

Filed: 17 March 2020

Forsyth County, Nos. 15 CRS 58663-4

STATE OF NORTH CAROLINA

v.

AARON LEE GORDON

Appeal by defendant from order entered 13 February 2017 by Judge Susan E. Bray in Forsyth County Superior Court. Originally heard in the Court of Appeals 22 March 2018, with opinion issued 4 September 2018. On 4 September 2019, the Supreme Court allowed the State's petition for discretionary review for the limited purpose of remanding to this Court for reconsideration in light of the Supreme Court's decision in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019).

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Michele A. Goldman, for defendant-appellant.*

ZACHARY, Judge.

Defendant Aaron Lee Gordon timely appealed from the trial court's order requiring him to enroll in lifetime satellite-based monitoring following his eventual release from prison. On 4 September 2018, this Court filed a published opinion vacating the trial court's civil order mandating satellite-based monitoring. *See State*

*v. Gordon*, __ N.C. App. __, 820 S.E.2d 339 (2018).  The State subsequently filed a petition for discretionary review with the North Carolina Supreme Court.  On 4 September 2019, the Supreme Court allowed the State's petition for discretionary review for the limited purpose of remanding to this Court for reconsideration in light of the Supreme Court's decision in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*").  Upon reconsideration, we reverse the trial court's civil order mandating satellite-based monitoring.

**Background**

I. Satellite-Based Monitoring

Our General Assembly enacted "a sex offender monitoring program that uses a continuous satellite-based monitoring system . . . designed to monitor" the locations of individuals who have been convicted of certain sex offenses.  N.C. Gen. Stat. § 14-208.40(a) (2019).  The present satellite-based monitoring program provides "[t]ime-correlated and continuous tracking of the geographic location of the subject using a global positioning system based on satellite and other location tracking technology." *Id.* § 14-208.40(c)(1).  The reporting frequency of an offender's location "may range from once a day (passive) to near real-time (active)." *Id.* § 14-208.40(c)(2).

After determining that an individual meets the criteria for one of three categories of offenders subject to the satellite-based monitoring program, *see id.* § 14-208.40(a)(1)-(3), the trial court must conduct a hearing in order to determine the

constitutionality of ordering the targeted individual to enroll in the satellite-based monitoring program. *Grady v. North Carolina*, 575 U.S. 306, 310, 191 L. Ed. 2d 459, 462 (2015) ("*Grady I*"); *State v. Blue*, 246 N.C. App. 259, 264, 783 S.E.2d 524, 527 (2016). The trial court may order a qualified individual to enroll in the satellite-based monitoring program during the initial sentencing phase pursuant to N.C. Gen. Stat. § 14-208.40A, or, under certain circumstances, at a later time during a "bring-back" hearing pursuant to N.C. Gen. Stat. § 14-208.40B. For an individual for whom satellite-based monitoring is imposed during the defendant's sentencing hearing pursuant to N.C. Gen. Stat. § 14-208.40A, monitoring shall begin upon the defendant's release from prison.

II. Defendant's Enrollment

In February 2017, Defendant pleaded guilty to statutory rape, second-degree rape, taking indecent liberties with a child, assault by strangulation, and first-degree kidnapping. Defendant was sentenced to 190-288 months' imprisonment and ordered to submit to lifetime sex-offender registration. After determining that Defendant was convicted of an "aggravated offense" under N.C. Gen. Stat. § 14-208.6(1A), the trial court then ordered that Defendant enroll in the satellite-based monitoring program for the remainder of his natural life upon his release from prison.

The State's only witness at Defendant's satellite-based monitoring hearing was Donald Lambert, a probation and parole officer in the Forsyth County sex-offender

unit. Lambert explained that the device currently used to monitor offenders enrolled in satellite-based monitoring is "just basically like having a cell phone on your leg." The battery requires two hours of charging each day, which requires that Defendant plug the charging cord into an electric outlet while the device remains attached to his leg. The charging cord is approximately eight to ten feet long. Every 90 days, Defendant must also allow a monitoring officer to enter his home in order to inspect and service the device.

Lambert testified that the device currently in use monitors an offender's location "at all times[.]" Once Defendant is released from prison and enrolled in satellite-based monitoring, "we [will] monitor [him] weekly. . . . [W]e just basically check the system to see his movement to see where he is, where he is going weekly. . . . [W]e review all the particular places daily where he's been." "[T]he report that can be generated from that tracking . . . gives that movement on a minute-by-minute position," as well as "the speed of movement at the time[.]" Under the current statutory regime, a monitoring officer may access an offender's location data at any time without obtaining a search warrant. If Defendant enters a restricted area—for example, if he drives past a school zone—the monitoring system will immediately alert the relevant authorities. Lambert explained that in such an event, monitoring officers typically "contact [the enrollee] by phone immediately after they get the alert, ask where they are."

When asked what would happen if Defendant "had a traveling sales job that covered" a regional territory and required travel to multiple states, Lambert explained that the sheriff's office "would have to approve it." "He would also be monitored through the Raleigh office where the satellite-based monitoring is. He would have to clear that with them as well. And then he would have to notify the state that he's going to if he was going to—and have to decide whether or not he'd have to stay on satellite-based monitoring in another state."

The State introduced Defendant's Static-99 score at his satellite-based monitoring hearing. Lambert explained that Static-99 is "an assessment tool that they've been doing for years on male defendants [convicted of reportable sex offenses] over 18. It's just a way to assess whether or not they'll commit a crime again of this [sexual] sort." Lambert testified that offenders are assigned "points" based on

> whether or not they've committed a violent crime, whether or not there was an unrelated victim, whether or not there was—there's male victims. . . . Other than just the sexual violence, was there another particular part of violence in the crime—in the index crime? Also, [Static-99 assessment] does take their prior sentencing dates into factor too.

Defendant received a "moderate/low" score on his Static-99, which Lambert explained meant there was "a moderate to low [risk] that he would ever commit a crime like this again." Defendant did not have any prior convictions for sex offenses, but he was assessed one point for having prior convictions for violent offenses.

Lambert agreed that Defendant's Static-99 score indicated that "it's not likely he's going to [commit a sex offense] again[.]" However, the State failed to present any evidence "as to what the rate of recidivism is during—even during [a] five-year period[.]"

The general purpose of the satellite-based monitoring program is "to monitor subject offenders and correlate their movements to reported crime incidents." N.C. Gen. Stat. § 14-208.40(d). However, Lambert also noted that the satellite-based monitoring program could potentially be beneficial to Defendant. As Lambert explained, "if somebody takes charges out, it will show where [the enrollee was]. So it kind of—it can help them as well, showing that they've been to particular places. If somebody says he was over here doing this at a particular time, . . . it will show, hey, no, he was over here."

After reviewing the evidence presented during the hearing, the trial court announced:

> Let the record reflect we've had this hearing, and the Court is going to find by the preponderance of the evidence that the factors that the State has set forth—his previous assaults, the Static-99 history, the fact that this occurred in an apartment with other children present as well and the relatively minor physical intrusion on [D]efendant to wear the device—it's small. It has to be charged two hours a day. But other than that, it can be used in water and other daily activities—so I am going to find . . . that he should enroll in satellite-based monitoring for his natural life unless terminated.

Defendant timely appealed the trial court's satellite-based monitoring order to this Court. On appeal, Defendant only challenged the constitutionality of the satellite-based monitoring order as applied to him as one convicted of an aggravated offense. He argued that the trial court erred in ordering that he be subjected to lifetime satellite-based monitoring because "[t]he [S]tate failed to meet its burden of proving that imposing [satellite-based monitoring] on [Defendant] is reasonable under the Fourth Amendment."

In a published opinion filed on 4 September 2018, we vacated the trial court's civil order mandating satellite-based monitoring. Relying heavily on *Grady I* and *State v. Grady*, __ N.C. App. __, 817 S.E.2d 18 (2018) ("*Grady II*"), *modified and aff'd*, 372 N.C. 509, 831 S.E.2d 542 (2019), we held that the State had failed to meet its burden of showing that the implementation of satellite-based monitoring of this Defendant will be a reasonable search fifteen to twenty years before its execution. The State subsequently filed a petition for discretionary review with the North Carolina Supreme Court. The Supreme Court issued its opinion in *Grady III* on 16 August 2019. Thereafter, on 4 September 2019, the Supreme Court entered an order allowing the State's petition for discretionary review in the instant case for the limited purpose of remanding to this Court for reconsideration in light of the Supreme Court's decision in *Grady III*.

### *State v. Grady I*

In *Grady I*, the United States Supreme Court made clear that its determination that satellite-based monitoring effects a search was only the first step in analyzing the program's constitutionality. *Grady I*, 575 U.S. at 310, 191 L. Ed. 2d at 462. As the Supreme Court reiterated, "[t]he Fourth Amendment prohibits only *unreasonable* searches." *Id.* The Supreme Court explained that whether satellite-based monitoring constitutes a reasonable Fourth Amendment search of a particular individual will "depend[ ] on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Id.* (citing *Samson v. California*, 547 U.S. 843, 165 L. Ed. 2d 250 (2006), and *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 132 L. Ed. 2d 564 (1995)). However, as our state courts had not yet conducted that analysis, the Supreme Court declined to "do so in the first instance." *Id.* Accordingly, after concluding that satellite-based monitoring effects a search implicating the Fourth Amendment, the Supreme Court reversed and remanded for our courts to determine the "ultimate question of the program's constitutionality." *Id.*

On remand from *Grady I*, the trial court held satellite-based monitoring constitutional, both facially and as applied. Upon the defendant's appeal, however, this Court concluded that because "the State failed to present any evidence of its need to monitor [the] defendant, or the procedures actually used to conduct such monitoring[,]" *Grady II*, __ N.C. App. at __, 817 S.E.2d at 28, the State had failed to

meet its burden of proving that satellite-based monitoring would constitute a reasonable Fourth Amendment search under the totality of the circumstances. *Id.* at __, 817 S.E.2d at 28. Accordingly, we held that the satellite-based monitoring program was unconstitutional as applied to defendant Grady, and we did not address the facial constitutionality of the satellite-based monitoring program. The State appealed to our Supreme Court.

In *Grady III*, our Supreme Court modified and affirmed this Court's decision in *Grady II*, holding satellite-based monitoring unconstitutional as applied to the defendant and all similarly situated individuals. The Court, in "offer[ing] guidance as to what factors to consider in determining whether [satellite-based monitoring] is reasonable under the totality of the circumstances[,]" determined that the defendant's "privacy interests and the nature of [the] . . . intrusion" must be weighed against the State's interests and the effectiveness of satellite-based monitoring. *State v. Griffin*, No. COA 17-386-2, slip op. at 13-14 (N.C. Ct. App. Feb. 18, 2020). The Court concluded that although recidivists have greatly diminished privacy interests, satellite-based monitoring is nevertheless a substantial intrusion; and that by failing to make "any showing . . . that the [satellite-based monitoring] program furthers [the State's] interest in solving crimes that have been committed, preventing the commission of sex crimes, or protecting the public," the State did not meet "its burden of establishing the reasonableness of the [satellite-based monitoring] program under

the Fourth Amendment balancing test required for warrantless searches." *Grady III*, 372 N.C. at 544, 831 S.E.2d at 568. Thus, the Court held that the satellite-based monitoring of sex offenders is unconstitutional as applied to defendant Grady as well as any unsupervised person[1] who was ordered to enroll in satellite-based monitoring because he or she is a recidivist. *Id.* at 545, 831 S.E.2d at 568.

Notably, the Supreme Court specifically limited its holding to those unsupervised offenders who are subject to satellite-based monitoring because of their classification as recidivists: "[O]ur decision today does not address whether an individual who is classified as a sexually violent predator, or convicted of an aggravated offense, or is an adult convicted of statutory rape or statutory sex offense with a victim under the age of thirteen" may be subject to mandatory lifetime satellite-based monitoring. *Id.* at 550, 831 S.E.2d at 572. In addition, the holding in *Grady III* applies only to unsupervised individuals; thus, supervised offenders—all persons currently subject to a period of State supervision, such as probationers, parolees, and individuals who remain under post-release supervision—remain subject to satellite-based monitoring following *Grady III*. *Id.* at 548, 831 S.E.2d at 572.

**Reconsideration of *State v. Gordon***

---

[1] An "unsupervised individual" is a person not on probation, parole, or post-release supervision. *Id.* at 531, 831 S.E.2d at 559.

Upon reconsideration of our original opinion, we again conclude that the State failed to meet its burden of showing that lifetime satellite-based monitoring is a reasonable search of this Defendant. Here, Defendant was ordered to submit to satellite-based monitoring solely due to his conviction of an aggravated offense; however, he will not actually enroll in the program for approximately 15 to 20 years, after he has completed his active prison sentence.

The State filed its satellite-based monitoring application at the time of Defendant's sentencing, in accordance with N.C. Gen. Stat. § 14-208.40A. Because of Defendant's active sentence, the trial court's order granting the State's application will allow the State the authority to search Defendant—i.e., to "physically occup[y] [defendant's person] for the purpose of obtaining information"—upon his release from prison in approximately 2032.[2] *Jones,* 565 U.S. at 404, 181 L. Ed. 2d at 918. Thus, Defendant has yet to be searched.

In considering the reasonableness of subjecting a defendant to satellite-based monitoring, the court must examine the totality of the circumstances to determine "whether the warrantless, suspicionless search here is reasonable when 'its intrusion on the individual's Fourth Amendment interests' is balanced 'against its promotion of legitimate governmental interests.' " *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557

---

[2] The trial court sentenced Defendant to 190 to 288 months' imprisonment. Defendant was given credit for 426 days spent in confinement prior to the date judgment was entered against him in February 2017.

(quoting *Vernonia Sch. Dist. 47J*, 515 U.S. at 652-53, 132 L. Ed. 2d at 574). In previous cases, we have considered the characteristics of the monitoring device in use at that time; the manner in which the defendant's location monitoring may be conducted, as well as the purpose for which that information was used according to the current statute; and the State's interest in monitoring that particular defendant in light of his "current threat of reoffending[.]" *Grady II*, __ N.C. App. at __, 817 S.E.2d at 25-26.

In the instant case, however, the State's ability to demonstrate reasonableness is hampered by a lack of knowledge concerning the unknown future circumstances relevant to that analysis. For instance, we are unable to consider "the extent to which the search intrudes upon reasonable privacy expectations" because the search will not occur until Defendant has served his active sentence. *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557 (citation omitted). The State makes no attempt to report the level of intrusion as to the information revealed under the satellite-based monitoring program, nor has it established that the nature and extent of the monitoring that is currently administered, and upon which the present order is based, will remain unchanged by the time that Defendant is released from prison. *Cf. Vernonia Sch. Dist. 47J*, 515 U.S. at 658, 132 L. Ed. 2d at 578 ("[I]t is significant that the tests at issue here look only for drugs, and not for whether the student is, for example, epileptic, pregnant, or diabetic. . . . And finally, the results of the tests . . . are not

turned over to law enforcement authorities or used for any internal disciplinary function." (citations omitted)).

Rather than addressing these concerns, the State focuses primarily on the "limited impact" of the monitoring device itself. The State, however, provides no indication that the monitoring device currently in use will be the same as—or even similar to—the device that will be employed approximately two decades from now. *See State v. Spinks*, 256 N.C. App. 596, 613, 808 S.E.2d 350, 361 (2017) (Stroud, J., concurring) ("The United States Supreme Court has recognized in recent cases the need to consider how modern technology works as part of analysis of the reasonableness of searches." (citing *Riley v. California,* 573 U.S. 373, 392, 189 L. Ed. 2d 430, 446-47 (2014))), *disc. review denied*, 370 N.C. 696, 811 S.E.2d 589 (2018).

Nor does the record before this Court reveal whether Defendant will be on supervised or unsupervised release at the time his monitoring is set to begin, affecting Defendant's privacy expectations in the wealth of information currently exposed. *Samson*, 547 U.S. at 850-52, 165 L. Ed. 2d at 258-59; *Grady II*, __ N.C. App. at __, 817 S.E.2d at 24 ("[The] [d]efendant is an unsupervised offender. He is not on probation or supervised release. . . . Solely by virtue of his legal status, then, it would seem that [the] defendant has a greater expectation of privacy than a supervised offender."); *see also Vernonia Sch. Dist. 47J*, 515 U.S. at 654, 132 L. Ed. 2d at 575

("[T]he legitimacy of certain privacy expectations vis-à-vis the State may depend upon the individual's legal relationship with the State.").

The State has also failed, at this time, to present evidence adequately estimating the government's need to search—i.e., the other side of the balancing test. *See Grady III*, 372 N.C. at 527, 831 S.E.2d at 557. The State merely asserts that "[i]f, as Defendant acknowledges, the State has 'a substantial interest in preventing sexual assaults,' then the State's evidence amply demonstrated that Defendant warranted such concern in the future despite his Static-99 risk assessment score." However, the State makes no attempt to distinguish this undeniably important interest from the State's "normal need for law enforcement[.]" *State v. Elder*, 368 N.C. 70, 74, 773 S.E.2d 51, 54 (2015) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717 (1987)); *see also Maryland v. King,* 569 U.S. 435, 481, 186 L. Ed. 2d 1, 41 (2013) (Scalia, J., dissenting) ("Solving unsolved crimes is a noble objective, but it occupies a lower place in the American pantheon of noble objectives than the protection of our people from suspicionless law-enforcement searches. *The Fourth Amendment must prevail.*" (emphasis added)).

In addition, to the extent that the current satellite-based monitoring program is justified by the State's interest in deterring future sexual assaults, the State's evidence falls short of demonstrating what Defendant's threat of reoffending will be

after having been incarcerated for roughly fifteen years.[3] *See, e.g., Brown v. Peyton*, 437 F.2d 1228, 1230 (4th Cir. 1971) ("One of the principal purposes of incarceration is rehabilitation . . . ."). The only individualized measure of Defendant's threat of reoffending was the Static-99, which the State's witness characterized as indicating that Defendant was "not likely" to recidivate. Lambert, the State's sole witness, was asked whether there was any evidence, besides Defendant's Static-99 score, "that would indicate the reason that the State of North Carolina would need to search his location or whereabouts on a regular basis[.]" Lambert responded, "I don't have any information on that[.]"

It is manifest that the State has not met its burden of establishing that it would otherwise be reasonable to grant authorities unlimited discretion to continuously and perpetually monitor Defendant's location information upon his release from prison. *See Jones*, 565 U.S. at 404, 181 L. Ed. 2d at 918. Authorizing the State to conduct a search of this magnitude approximately fifteen to twenty years in the future based solely upon scant references to present circumstances would obviate the need to evaluate reasonableness under the "totality of the circumstances" altogether. "We therefore hold, consistent with the balancing test employed in *Grady III*, that the imposition of [satellite-based monitoring] . . . as required by the trial court's order is

---

[3] We are cognizant of the fact that Defendant's Static-99 score was partly based upon his age at the likely date of release. However, this factor only accounts for Defendant's age, and not the duration of his active sentence or his potential for rehabilitation while incarcerated.

unconstitutional as applied to Defendant and must be reversed." *Griffin*, slip op. at 20.

Accordingly, we necessarily conclude that the State has failed to meet its burden of establishing that lifetime satellite-based monitoring following Defendant's eventual release from prison is a reasonable search in Defendant's case. We therefore reverse the trial court's order.

REVERSED.

Judge BROOK concurs.

Judge DIETZ concurs by separate opinion.

No. COA17-1077-2 – *State v. Gordon*

DIETZ, Judge, concurring in the judgment.

I agree with the outcome of this case because we are bound by this Court's recently re-issued decision in *State v. Griffin,* No. COA17-386-2, __ N.C. App. __, __ S.E.2d __ (2020). I do not join the majority opinion for the reasons discussed in my concurring opinion in *State v. Gordon*, __ N.C. App. __, __, 820 S.E.2d 339, 349–50 (2018), *remanded,* 372 N.C. 722, __ S.E.2d __ (2019).