IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-368

Filed: 18 August 2020

Cumberland County, Nos. 17 CRS 57328-29

STATE OF NORTH CAROLINA

v.

JOHNNY LINDQUIST

Appeal by defendant from order entered 8 November 2018 by Judge Claire V. Hill in Cumberland County Superior Court. Heard in the Court of Appeals 3 December 2019.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for defendant-appellant.*

ZACHARY, Judge.

Defendant Johnny Lindquist appeals from the order subjecting him to lifetime satellite-based monitoring upon his release from imprisonment. After careful review, we vacate the satellite-based monitoring order and remand to the trial court.

## *Background*

In 2014, Defendant was convicted of taking indecent liberties with a child. While on parole for that offense, on 1 November 2018, Defendant pleaded guilty to second-degree forcible rape and second-degree forcible sex offense before the Honorable Claire V. Hill in Cumberland County Superior Court.

After entering judgment upon Defendant's guilty plea, the trial court held a satellite-based monitoring hearing. The trial court considered as evidence the factual basis of Defendant's plea and the evidence presented by the State at the satellite-based monitoring hearing. The State presented the testimony of Scott Payne and three exhibits: (1) a study concerning the effectiveness of GPS monitoring of sex offenders, referred to as "the California Study"; (2) a certified copy of Defendant's plea transcript, indicating that in 2014 he pleaded guilty to the charge of taking indecent liberties with a child; and (3) Defendant's STATIC-99 assessment. On 8 November 2018, after considering the evidence presented and the arguments of counsel, the trial court entered its order subjecting Defendant to lifetime satellite-based monitoring upon his release from prison. Defendant timely filed written notice of appeal from the satellite-based monitoring order.

## *Discussion*

Our General Statutes provide for a " 'sex offender monitoring program that uses a continuous satellite-based monitoring system designed to monitor' the locations of individuals who have been convicted of certain sex offenses." *State v. Gordon* ("*Gordon II*"), __ N.C. App. __, __, 840 S.E.2d 907, 909, *temp. stay allowed*, 374 N.C. 430, 839 S.E.2d 351 (2020) (quoting N.C. Gen. Stat. § 14-208.40(a) (2019)). "The present satellite-based monitoring program provides 'time-correlated and continuous tracking of the geographic location of the subject using a global

positioning system based on satellite and other location tracking technology.' " *Id.* (quoting N.C. Gen. Stat. § 14-208.40(c)(1)).

"The United States Supreme Court has determined that the monitoring of an individual under North Carolina's [satellite-based monitoring] program constitutes a continuous warrantless search of that individual." *State v. Gambrell*, __ N.C. App. __, __, 828 S.E.2d 749, 750 (2019) (citing *Grady v. North Carolina* ("*Grady I*"), 575 U.S. 306, 310, 191 L. Ed. 2d 459, 462 (2015)). As a warrantless search, any order subjecting an individual to satellite-based monitoring is subject to analysis under the Fourth Amendment to the United States Constitution. "[T]he trial court must conduct a hearing in order to determine the constitutionality of ordering the targeted individual to enroll in the satellite-based monitoring program." *Gordon II*, __ N.C. App. at __, 840 S.E.2d at 909 (citing *Grady I*, 575 U.S. at 310, 191 L. Ed. 2d at 462).

In *State v. Grady* ("*Grady III*"), 372 N.C. 509, 831 S.E.2d 542 (2019), our Supreme Court conducted the balancing test prescribed by the United States Supreme Court:

> The balancing analysis that we are called upon to conduct here requires us to weigh the extent of the intrusion upon legitimate Fourth Amendment interests against the extent to which the [satellite-based monitoring] program sufficiently promotes legitimate governmental interests to justify the search, thus rendering it reasonable under the Fourth Amendment. In this aspect of the balancing test, we consider the nature and immediacy of the governmental concern at issue here, and the efficacy of this means for meeting it.

*Grady III*, 372 N.C. at 538, 831 S.E.2d at 564 (internal citation and quotation marks omitted) (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 660, 132 L. Ed. 2d 564, 574, 579 (1995)).

In *State v. Griffin* ("*Griffin II*"), __ N.C. App. __, 840 S.E.2d 267, *temp. stay allowed*, 374 N.C. 267, 838 S.E.2d 460 (2020), this Court applied the *Grady III* analysis, listing the three factors to be balanced in determining the constitutionality of the search, under the totality of the circumstances:

> (1) the nature of the defendant's legitimate privacy interests in light of his status as a registered sex offender[;] (2) the intrusive qualities of [satellite-based monitoring] into the defendant's privacy interests[;] and (3) the State's legitimate interests in conducting [satellite-based] monitoring and the effectiveness of [satellite-based monitoring] in addressing those interests[.]

*Griffin II*, __ N.C. App. at __, 840 S.E.2d at 271 (citations omitted).

We also highlighted the emphasis in *Grady III* on efficacy when conducting such an analysis, noting that our Supreme Court "wrote that a problem justifying the need for a warrantless search cannot simply be assumed; instead, the existence of the problem and the *efficacy of the solution* need to be demonstrated by the government." *Id.* at __, 840 S.E.2d at 272 (emphasis added) (citation and internal quotation marks omitted). Although evidence that satellite-based monitoring is effective is merely one factor to be considered, "[t]he State's inability to produce evidence of the efficacy of the lifetime [satellite-based monitoring] program in advancing any of its asserted

legitimate State interests *weighs heavily against* a conclusion of reasonableness[.]" *Id.* at __, 840 S.E.2d at 273 (citation omitted).

Here, we are unable to determine the basis of the trial court's decision to subject Defendant to lifetime satellite-based monitoring, particularly with regard to the efficacy of satellite-based monitoring, because of a discrepancy between the study admitted into evidence as State's Exhibit #1 and the study referenced in the trial court's order as State's Exhibit #1.

During the satellite-based monitoring hearing, the State called Scott Payne, an employee of the Department of Public Safety Sex Offender Management Office, as a witness. In addition to testifying to his work in the field of sex offender management, Payne testified concerning a 2015 study titled "Does GPS Improve Recidivism among High Risk Sex Offenders? Outcomes for California's GPS Pilot for High Risk Sex Offender Parolees," which addressed the efficacy of satellite-based monitoring of sex offenders. The parties and the trial court continued to reference "the California Study" for the remainder of the hearing, and a copy of the California Study was admitted into evidence without objection as State's Exhibit #1.

In fact, there are two California studies at issue in the case at bar: "Monitoring High-Risk Sex Offenders With GPS Technology: An Evaluation of the California Supervision Program Final Report" (the "2012 California Study"), and "Does GPS Improve Recidivism among High Risk Sex Offenders? Outcomes for California's GPS

Pilot for High Risk Sex Offender Parolees" (the "2015 California Study"). At the

satellite-based monitoring hearing, the 2012 California Study was not discussed;

however, the 2015 California Study was discussed at length, and a copy of the study

was admitted into evidence as State's Exhibit #1:

> [THE STATE]: . . . Your Honor, if I could mark what we commonly refer to as the California study as State's Exhibit 1. May I approach?
>
> THE COURT: Yes. Any objection?
>
> [DEFENSE COUNSEL]: No, Your Honor.
>
> THE COURT: All right. It is admitted. State's Exhibit 1 as being the California study -- it's titled --
>
> (Whereupon State's Exhibit 1 was marked into evidence.)
>
> [THE STATE]: *"Does GPS improve recidivism among high-risk offenders, outcomes for California's GPS pilot for high-risk sex offenders/parolees."* May I approach again?
>
> THE COURT: Yes. It is admitted without objection.

(Emphasis added).

The trial court's satellite-based monitoring order, however, refers to the 2012

California Study as State's Exhibit #1:

> In ruling on this motion the [c]ourt considered the following evidence and testimony: *State's Exhibit 1 – Monitoring High-Risk Sex Offenders With GPS Technology: An Evaluation[ ]of the California Supervision Program Final Report (2012).*

(Emphasis added).

It is manifest that the trial court relied on "the California Study's" findings regarding the efficacy of satellite-based monitoring in making its determination that Defendant should be subject to lifetime satellite-based monitoring. Three of the trial court's findings of fact specifically refer to the study:

> 1. In ruling on this motion the [c]ourt considered the following evidence and testimony: *State's Exhibit 1 – Monitoring High-Risk Sex Offenders With GPS Technology: An Evaluation[ ]of the California Supervision Program Final Report (2012).* State's Exhibit 2 – Certified Copy of Defendant's Conviction of Taking Indecent Liberties With a Child case no. 13CRS 52182 in Sampson County. State's Exhibit 3 – The Static 99 the Static 99 [sic] risk reporting statement of the Defendant Lindquist. Also the testimony of Scott Payne from the Sex Offender Management Office of Department of Public Safety.
>
>      . . . .
>
> 6. The [c]ourt has also considered *The California Study, which has been admitted as State's Exhibit 1.* In the conclusions for *The California Study*, it was found that the GPS parolees were overall: 1. Less likely to receive a violation for a new crime; 2. The subjects in the GPS group had better outcomes in terms of sex-related violations and new arrests; 3. Reduced absconding and registration failures with the use of GPS is an important finding in that the whereabouts of sex offenders is a critical component of effectively monitoring them in the community; 4. Finding that the comparison group parolees were more likely to be guilty of a parole violation for a criminal offense, may indicate that the GPS deterred criminal behavior among sex offenders who would have otherwise committed a new offense.

> 7. *The California Study* found that the GPS monitoring of sex offenders has demonstrated benefits. That study found that offenders monitored by GPS "demonstrate significantly better outcomes for both compliance and recidivism."

(Emphases added). It is unclear, however, on which "California Study" the trial court relied in reaching its ultimate decision in this case.

In light of the uncertainty surrounding a material basis of the trial court's decision and the significant Fourth Amendment interests at stake, we decline to review this matter without resolution of the question of upon which "California Study" the trial court relied.

## *Conclusion*

Accordingly, we vacate the satellite-based monitoring order and remand this matter to the trial court for the limited purpose of amending the order to clarify upon which study the trial court relied in making its determination that Defendant should be subject to lifetime satellite-based monitoring.

VACATED AND REMANDED.

Chief Judge McGEE and Judge DIETZ concur.