IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-787

Filed: 16 June 2020

Alamance County, No. 17 CRS 50680

STATE OF NORTH CAROLINA

v.

RONNIE HUTCHENS, Defendant.

Appeal by Defendant from orders entered 12 July 2018 by Judge Paul C. Ridgeway in Alamance County Superior Court. Heard in the Court of Appeals 28 April 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

*Sarah Holladay for Defendant.*

INMAN, Judge.

Ronnie Hutchens ("Defendant"), who raped his roommate and forced her to perform oral sex, was sentenced to a prison term of roughly seven to fourteen years, to be followed by five years of post-release supervision on conditions including satellite-based monitoring ("SBM"). He appeals, by petition for writ of certiorari, from an order requiring him to submit to SBM for the remainder of his life. We grant Defendant's petition in our discretion and, based on recent decisions from the

Supreme Court of the United States and the North Carolina Supreme Court, reverse the trial court's order imposing lifetime SBM.

Defendant also seeks review of an order assessing attorney's fees against him as part of his sentencing, and the State concedes error under *State v. Friend*, 257 N.C. App. 516, 809 S.E.2d 902 (2018). But because no civil judgment for those attorney's fees has been entered, we dismiss this portion of Defendant's appeal.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

The record on appeal discloses the following:

On 9 July 2018, Defendant entered an *Alford* plea to second degree forcible rape, second degree sex offense, and assault on a female. The trial court completed a prior record level worksheet disclosing a lengthy history of felony and misdemeanor convictions, consisting largely of larceny, breaking and entering, drug possession, and forgery convictions between 1982 and 2016. The worksheet also showed two misdemeanor convictions for assault on a female from 1997 and 2015. In conjunction with Defendant's plea and prior record level, the trial court sentenced Defendant to 110 months to 192 months imprisonment. It also ordered Defendant to have no contact with the victim.

Because Defendant pled guilty to a sexually violent offense, the trial court held a hearing on whether to impose lifetime SBM pursuant to N.C. Gen. Stat. § 14-208.40A(c) (2017). At the hearing, the State introduced testimony from Brandon Cox,

a probation officer, regarding the use of SBM to track defendants. Officer Cox testified that SBM is conducted via an ankle bracelet called an ET-1 that monitors a defendant's location and speed of travel. The device is waterproof, measures roughly an inch-and-a-half wide and three inches tall, and must be plugged into an electrical outlet to be recharged. Officer Cox also testified that his office checks the information collected from the device at least three times a week to ensure that the offender is "complying with their sex offender treatment classes or any other specific items on their judgment . . . [and that] they're not going to places they're not supposed to be going to and complying with all the conditions of the registry." If the data discloses that an offender has been in a prohibited place or attempted to remove the bracelet, a probation officer is sent to investigate. Officer Cox acknowledged that although he did not consider the "main objective" of SBM to "generate evidence for law enforcement," the data collected by his office can be used by police "to exonerate an individual and/or it could be used against them."

The State also introduced a Static-99 into evidence. Officer Cox, who completed the form for Defendant, testified that it is used to "predict[] the sexual recidivism for th[e] offender," and that Defendant scored a 1, placing him in the "low risk" category. According to Officer Cox, "[o]ffenders with the same score, in multiple routine samples, have been found to sexually recidivate at 2.5 to . . . 5.8 percent after five years."

After the State's presentation of evidence, Defendant argued that the imposition of lifetime SBM was not a reasonable warrantless search under the Fourth Amendment based on *State v. Grady*, 259 N.C. App. 664, 817 S.E.2d 18 (2018) ("*Grady II*"), *aff'd as modified*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"). The State argued that even though Defendant had scored in the low risk category on the Static-99, he did so only because of his advanced age. The State pointed out that when Defendant's age was removed from the Static-99 risk assessment, Defendant scored in the "moderate to high" risk level. Further, the State argued that Defendant's first violent offense, in 1997, indicated that his propensity for violence increased as he aged. It also argued that Defendant's privacy rights were appreciably diminished because Defendant is a convicted felon, a registered sex offender, and will be subject to post-release supervision for five years after his release from prison. The State argued that SBM served a legitimate governmental interest because it promoted "re-integration and positive . . . citizenship of individuals" by deterring defendants from reoffending. It also argued that SBM served a special need divorced from law enforcement but, in doing so, proceeded to restate its earlier argument: "this is . . . to help ensure that . . . they are continuing to comply with the law; they're being law-abiding citizens; that they're not engaging in further conduct that has become a risk factor[.] . . . We, as a society, have a vested interest in seeing that no further sex

crimes occur." The State did not introduce any evidence showing SBM was actually effective in accomplishing those objectives.

At the conclusion of the hearing, the trial court announced that lifetime SBM constituted a reasonable search and served a special purpose "to ensure . . . that there is not recidivism." In support of its ruling, the trial court found that the SBM device constituted "a relatively minimal intrusion upon individual privacy, particularly those individuals who are convicted of sex offenses and are required to be on the registry." It further found "that the State has met, by the preponderance of evidence, that the imposition of [SBM] does promote a governmental interest in this case; it is accurate." And it found that Defendant showed a sufficient risk of reoffending based on his prior criminal history, as it demonstrated his "propensity to commit violent offenses seems to have increased with age rather than diminished with age."

The trial court entered its SBM order and written judgment sentencing Defendant on 9 July 2018. The criminal judgment also indicated that Defendant was ordered to pay $1,200 in attorney's fees, but the record on appeal does not include a civil judgment entered in accordance with N.C. Gen. Stat. § 7A-455(b) (2017). Nor does the record disclose that Defendant was given an opportunity to be heard on the issue as required by *Friend*.

Defendant did not seek to appeal any orders entered in his case until he sent a letter dated 17 February 2019 to the Alamance County Clerk of Superior Court, in

which he requested an appeal of his second degree rape conviction "on the grounds of conflict of interest and ineffective assistance of counsel." After the filing of appellate entries and appointment of counsel, Defendant filed a petition for writ of certiorari on 15 November 2019 requesting review of the SBM order.

## II. ANALYSIS

### A. *Appellate Jurisdiction*

#### 1. SBM Order

"A defendant must file a written notice of appeal from an SBM order pursuant to Rule 3 of the Rules of Appellate Procedure because of the civil nature of SBM proceedings." *State v. Lopez*, ___ N.C. App. ___, ___, 826 S.E.2d 498, 503 (2019). However, this Court has granted a defendant's petition for writ of certiorari to review a meritorious challenge to an SBM order notwithstanding his failure to file a written notice of appeal—timely or otherwise. *Id.* at 504. We have done so even when the defendant failed to give oral notice of appeal. *See State v. Simmons*, 253 N.C. App. 239, 798 S.E.2d 441, 2017 WL 1381810, *3 (2017) (unpublished) (granting certiorari to review and reverse an SBM order when the defendant filed a written appeal from his underlying convictions but did not appeal the SBM order orally or in writing). Further, we have allowed certiorari review of an SBM order when the defendant filed a defective *pro se* written notice of appeal that was not served on the State " '[i]n the interest of justice, and to expedite the decision in the public interest.' " *State v.*

*Robinson*, 249 N.C. App. 568, 572, 791 S.E.2d 862, 865 (2016) (quoting *State v. Brooks*, 204 N.C. App 193, 195, 693 S.E.2d 204, 206 (2010)).  Given the meritorious nature of Defendant's argument, and the current "tumultuous time in our case law regarding the parties' burdens and the role of the trial court in hearings on SBM," *Lopez*, \_\_\_ N.C. App. at \_\_\_, 826 S.E.2d at 509, we allow his petition for writ of certiorari to review the SBM order in our discretion.

2.  Attorney's Fees

Defendant acknowledges in his principal brief that the lack of a civil judgment for fees deprives this Court of subject matter jurisdiction.  *State v. Jacobs*, 361 N.C. 565, 565, 648 S.E.2d 841, 842 (2007).  Defendant asks this Court to invoke Rule 2 of the North Carolina Rules of Appellate Procedure to review the order on the merits or, in the alternative, issue an extraordinary writ compelling entry of a civil judgment or preventing collection of any attorney's fees.  We lack subject matter jurisdiction to review an appeal from an order for attorney's fees not entered as a civil judgment. Defendant will not be prejudiced unless and until a civil judgment is entered.  So we decline to suspend the rules to review the order or issue either of the requested extraordinary writs.  *See State v. Walker*, 204 N.C. App. 431, 450, 694 S.E.2d 484, 497 (2010) (declining to review an indigent defendant's appeal of a trial court's "recommendation" for attorney's fees at sentencing when no civil judgment was entered because "proceeding to rule on [the d]efendant's challenge would put us in

the position of evaluating the validity of a judgment that might, for all we know, have never been entered"). This portion of Defendant's appeal is dismissed.

*B. Analysis*

This Court has faced no shortage of SBM appeals in the years since the Supreme Court of the United States held in *Grady v. North Carolina*, 575 U.S. 306, 191 L. Ed. 2d 459 (2015) ("*Grady I*"), that its imposition constitutes a warrantless search within the meaning of the Fourth Amendment and necessitates an inquiry into reasonableness under the totality of the circumstances. 575 U.S. at 310, 191 L. Ed. 2d at 462. Our Supreme Court has since addressed the question in *Grady III*, holding that the imposition of mandatory lifetime SBM "is unconstitutional in its application to all individuals in the same category as defendant—specifically, individuals who are subject to mandatory lifetime SBM based solely on their status as a statutorily defined 'recidivist' who have completed their prison sentences and are no longer supervised by the State[.]" *Grady III*, 372 N.C. at 522, 831 S.E.2d at 553. Although the Supreme Court limited the facial aspect of its holding to that singular category of defendants, it did so after engaging in a reasonableness analysis under the totality of the circumstances as required by the United States Supreme Court in *Grady I*.

Defendant is not a recidivist, so the order requiring Defendant to submit to lifetime SBM is not facially unconstitutional under *Grady III*. We must conduct a

reasonableness analysis anew. As recognized by both Defendant and the State,[1] *Grady III*—the most recent decision from our Supreme Court applying a reasonableness analysis under the Fourth Amendment to an SBM order—provides us with guidance as to the facts and factors to be included in the totality of the circumstances we consider. This approach is consistent with this Court's reconsideration of other non-recidivist SBM appeals following *Grady III*. *See State v. Griffin*, No. COA 17-386-2, slip op. at 13, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 769356 (Feb. 18, 2020) ("Although *Grady III* does not compel the result we must reach in this case, its reasonableness analysis does provide us with a roadmap to get there. . . . *Grady III* offers guidance as to what factors to consider in determining whether SBM is reasonable under the totality of the circumstances."), *temp. stay allowed*, ___ N.C. ___, 838 S.E.2d 460; *State v. Gordon*, No. COA 17-1077-2, slip op. at 11-12, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (March 17, 2020) (applying the reasonableness analysis employed in *Grady III* to a defendant convicted of an aggravated offense and subject to lifetime SBM as a result), *temp. stay allowed*, ___ N.C. ___, 839 S.E.2d 351.

We note that, following the Supreme Court's orders temporarily staying this Court's decisions in both *Griffin* and *Gordon*, the precedential value of those decisions

---

[1] Defendant argues that "the rationale of *Grady [III]* requires relief for [Defendant,]" while the State acknowledges that "[b]oth the United States Supreme Court in *Grady I*, and the North Carolina Supreme Court in *Grady III*, have made clear that the test for constitutionality of SBM searches 'includes' certain factors."

is in limbo. While they are not controlling, neither have they been overturned. They are instructive as the most recent published decisions of this Court addressing *Grady III*'s application outside the recidivist context, particularly in light of the parties' agreement that *Grady III* provides guidance in this case.

In accordance with *Grady III*, we must consider the totality of the circumstances to determine "whether the warrantless, suspicionless search here is reasonable when 'its intrusion on the individual's Fourth Amendment interest' is balanced 'against its promotion of legitimate governmental interests.' " *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 132 L. Ed. 2d 564, 574 (1995)). The State bears the burden of showing the reasonableness of the search under this test. *Id.* at 543, 831 S.E.2d at 568.

1. SBM's Intrusion into Defendant's Recognizable Privacy Interests

Defendant's SBM order was entered at the same time as his sentence, so he will not be subject to SBM until he serves his prison term of roughly seven-and-a-half to fourteen-and-a-half years.[2] This Court addressed a similar situation in *Gordon*, after the trial court imposed lifetime SBM on a defendant—convicted, as here, of an aggravated offense—at sentencing, with monitoring set to begin on his release from prison roughly fifteen to twenty years later. *Gordon*, slip op. at 11, ___ N.C. App. at ___, ___ S.E.2d at ___. We noted that "the State's ability to demonstrate

---

[2] Defendant was sentenced to 110 to 192 months imprisonment, with credit for 514 days served.

reasonableness is hampered by a lack of knowledge concerning the unknown future circumstances relevant to that analysis." *Id.*, slip op. at 12, ___ N.C. App. at ___, ___ S.E.2d at ___. We continued:

> For instance, we are unable to consider 'the extent to which the search intrudes upon reasonable privacy expectations' because the search will not occur until Defendant has served his active sentence. The State . . . has [not] established that the nature and extent of the monitoring that is currently administered, and upon which the present order is based, will remain unchanged by the time that Defendant is released from prison.
>
> . . . .
>
> The State . . . provides no indication that the monitoring device currently in use will be the same as—or even similar to—the device that will be employed approximately two decades from now.

*Id.* at 12-13 (quoting *Grady III*, 372 N.C. at 527, 831 S.E.2d at 557) (additional citations omitted). Here, as in *Gordon*, the State presented no evidence showing "that the nature and extent of the monitoring that is currently administered, and upon which the present order is based, will remain unchanged by the time that Defendant is released from prison." *Id.* at 12. Likewise, the State has not shown that the ET-1 monitoring device about which Officer Cox testified will be the device Defendant will ultimately be required to wear once his lengthy prison sentence has run.

Setting aside the above concerns does not meaningfully tilt this portion of the analysis in favor of lifetime SBM. The Supreme Court in *Grady III* addressed the

intrusiveness of the ET-1, holding that its physical restrictions, coupled with its ability to constantly track the defendant's location, constituted "a deep, if not unique, intrusion[.]" 372 N.C. at 538, 831 S.E.2d at 564. In *Griffin*, this Court considered the constitutionality of an order imposing thirty years of SBM on a defendant who, like Defendant here, was also subject to a term of post-release supervision. Slip op. at 16, ___ N.C. App. at ___, ___ S.E.2d at ___. We acknowledged that the defendant's "rights to privacy in his person, his home, and his movements . . . may be appreciably diminished *during his five-year term of post-release supervision.*" *Id.* (emphasis added). By that same token, however, we held that the "[d]efendant's 'constitutional privacy rights, including his Fourth Amendment expectations of privacy, [will] have been restored' one-sixth of the way into the warrantless search at issue. [The d]efendant, then, will enjoy appreciable, recognizable privacy interests that weigh against the imposition of SBM for the remainder of the thirty-year term." *Id.* (quoting *Grady III*, 372 N.C. at 534, 831 S.E.2d at 561).

Here, while Defendant will have diminished privacy interests arising from his offense for five years of post-release supervision, he will have no such diminished interest for the remaining years of his natural life during which he must submit to SBM. And while Defendant has an opportunity to seek relief from the SBM order by petitioning the Post-Release Supervision and Parole Commission, N.C. Gen. Stat. § 14-208.43(c) (2017), such a procedure does not amount to "judicial review of the

continued need for SBM [and] is contrary to the general understanding that judicial oversight of searches and seizures, in the form of a warrant requirement, is an important check on police power." *Grady III*, 372 N.C. at 535, 831 S.E.2d at 562.

    2. The State's Interest in and the Efficacy of SBM

The State argued before the trial court that although Defendant was assessed as a "low risk" by the Static-99, his propensity for violence and reoffending had increased as he aged—and that SBM would discourage such recidivism. Defendant was 56 years old when he was sentenced to prison for roughly seven to fourteen years and SBM would not begin until his release. Thus, the State's argument regarding Defendant's increasing propensity for violence with age assumes he will likely continue his upward trajectory of violence even beyond age 70—his age upon release if imprisoned for the maximum sentence—until his death. The State presented no evidence to support such an assumption, which is contrary to the STATIC-99, an instrument developed based upon statistical data and research regarding sex offenders. Assuming *arguendo* that Defendant poses such a risk, we recognize that the State's interest in reducing recidivism is "without question legitimate." *Id.* at 543, 831 S.E.2d at 568. And yet, the State introduced no evidence before the trial court showing that SBM will actually prevent or reduce recidivism–either generally or on the part of Defendant. Although counsel for the State argued at trial that "knowing that this device is on you . . . is a deterrent[,]" it did so without introducing

any supporting testimony or other evidence. Our Supreme Court has made clear that such bald assertions cannot support the imposition of SBM. *See id.*, 372 N.C. at 543-44, 831 S.E.2d at 567-68 ("[T]he State has not presented any evidence demonstrating that the SBM program is effective at deterring crime. Thus, the State's deterrence argument, like the other arguments it has advanced with respect to the efficacy issue, fails for lack of evidentiary support. . . . We cannot simply assume that the program serves its goals and purposes when determining whether the State's interest outweighs the significant burden that lifetime SBM imposes on the privacy rights of recidivists subjected to it." (citation omitted)); *see also State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) ("[I]t is axiomatic that arguments of counsel are not evidence." (citations omitted)).

On appeal, the State apparently acknowledges the immateriality of the special needs doctrine to this case, writing in its brief that if the hearing had been conducted after *Grady III*, "the words 'special needs' would have been absent from the trial court's holding." The State instead argues that "the special need" identified below was merely a different interest served by SBM to be considered under the totality of the circumstances, namely "the State's stated purpose [in] ensuring Defendant stays away from places he should not be, *e.g.,* exclusion zones[.]" Although the State referenced this interest, it did so only in the context of reducing recidivism:

> [THE STATE]: . . . The purpose of [SBM] is not solely to investigate crimes. As Officer Cox said, law enforcement

> cannot just sit there . . . and check all the times to see if they can catch a sex offender on a premise to which they cannot be.
>
> This is not something that [law enforcement] share[s] in probation and parole in looking at; this is something probation and parole is doing to help ensure that, as offenders are coming out of jail or having just been sentenced on probation on a device, that they are continuing to comply with the law; they're being law-abiding citizens; that they're not engaging in further conduct that has become a risk factor either from a previous conviction or has occurred since.
>
> And for these reasons, I think that . . . [SBM] does satisfy the special needs doctrine. We, as a society, have a vested interest in seeing that no further sex crimes occur.

Consistent with this argument, the "special need" identified by the trial court in announcing its decision to impose SBM was "to ensure that . . . there is not recidivism."

The State also argues that its interest in keeping Defendant out of "exclusion zones" is another method of ensuring "public safety" and "[p]rotecting the public by monitoring the whereabouts of aggravated sex offenders." However, the State fails to identify any record evidence showing that SBM of Defendant will serve such an interest. As a registered sex offender, Defendant is statutorily excluded from schools, nurseries, and other "place[s] intended primarily for the use, care, or supervision of minors," N.C. Gen. Stat. § 14-208.18(a)(1) (2017), but the State presented no evidence showing Defendant will be inclined to violate that prohibition. Defendant committed

a sexual offense against his adult roommate and he has no history of sexual offenses or violence against children.

The State also argues on appeal that SBM is reasonable in this case because in sentencing Defendant, the trial court ordered him have no contact with his victim. The no-contact order was entered *prior to* the SBM hearing. The State presented no evidence or argument to the trial court that SBM would or could monitor Defendant's location relative to that of his victim. Officer Cox testified that in monitoring Defendant's entry into prohibited areas, he would be checking "to ensure that they're not *in a school zone or near a daycare or any other place [with] the primary purpose of childcare*[,]"and did not mention the no-contact order.

The same lack of evidence plagues the State's argument that "offenders who are in places they should not be[ ] are more likely to offend."[3] Our Supreme Court has held that the bald assertions of counsel regarding the function of SBM, even those that appeal to general common sense, are no substitute for competent evidence. *Cf. Grady III*, 372 N.C. at 544-45, 831 S.E.2d at 568 (holding the State failed to show SBM was reasonable under the totality of the circumstances "without any showing by the State that the program furthers its interest in solving crimes that have been committed, preventing the commission of sex crimes, or protecting the public").

---

[3] If anything, this suggests that this purported alternative basis for SBM is simply a restatement of the State's interest in combatting recidivism.

Ultimately, the State failed to introduce evidence that SBM would be effective to prevent Defendant from reoffending, and, while not dispositive of our analysis, the "inability to produce evidence of the efficacy of the lifetime SBM program in advancing any of its asserted legitimate State interests weighs heavily against a conclusion of reasonableness here." *Id.* at 543, 831 S.E.2d at 567.

3.  Totality of the Circumstances

Considering the factors discussed above under the totality of the circumstances gleaned from the record evidence before us, we hold that the State has failed to satisfy its burden of showing that generally, or with respect to Defendant, lifetime SBM is reasonable, as the Fourth Amendment requires for warrantless searches. While it is true that Defendant will be subject to post-release supervision for five years, that supervisory interest will already be served through mandatory SBM imposed as a condition of his release. *See* N.C. Gen. Stat. § 15A-1368.4(b1)(6) (2017) (requiring persons convicted of an aggravated sexual offense to submit to SBM as a mandatory condition of post-release supervision). Thus, in addition to outlasting that supervisory interest, the lifetime SBM order imposed here is unnecessary to satisfy that aim for five years after Defendant's release from prison. Defendant will enjoy appreciable privacy interests following his term of post-release supervision, and those interests will suffer "a deep, if not unique, intrusion[,]" *Grady III*, 372 N.C. at 538, 831 S.E.2d at 564, as a result of monitoring with an ET-1 bracelet—assuming that is,

in fact, how Defendant will be monitored several years from now. As noted in *Grady III*, the intrusion includes the physical imposition of a device connected to Defendant's body at all times to monitor Defendant's location and travel 24 hours a day. *Id.*

Weighing the State's failure to introduce any evidence showing that lifetime SBM monitoring will advance its interest in reducing recidivism—or any other argued interest—against Defendant's constitutional privacy interests, we cannot conclude that the State's legitimate governmental concerns outweigh Defendant's cognizable Fourth Amendment privacy rights.

### III. <u>CONCLUSION</u>

We eagerly await further guidance from our Supreme Court regarding the parameters of *Grady III*. Until then, we must find our way using established principles of appellate review and *stare decisis*. Because the State has not met its burden of showing lifetime SBM constitutes a reasonable warrantless search based on the record below, the trial court's order imposing SBM is reversed.

Because no civil judgment has been entered imposing the attorney's fees which Defendant seeks to challenge, we dismiss that portion of Defendant's appeal.

REVERSED IN PART; APPEAL DISMISSED IN PART.

Judges STROUD and COLLINS concur.