DILLON, Judge.
 

 *641
 
 Defendant Kevin James Gambrell appeals from an order requiring him to submit to satellite-based monitoring ("SBM") for the rest of his natural life.
 

 I. Background
 

 Defendant was charged with and pleaded guilty to taking indecent liberties with a child. Defendant was sentenced in the presumptive range. The State also sought to have Defendant register as a sex-offender and to enroll in SBM. Defendant motioned to dismiss the State's petition for SBM and to declare such program unconstitutional. The trial court
 
 *642
 
 denied Defendant's motion to dismiss and, in turn, ordered him to submit to SBM for the rest of his natural life. Defendant timely appealed.
 

 II. Analysis
 

 In his appeal, Defendant argues that the State's SBM program is both unreasonable as applied to him and facially unconstitutional. We review a trial court's determination that SBM is reasonable
 
 de novo
 
 .
 
 State v. Bare,
 

 197 N.C. App. 461
 
 , 464,
 
 677 S.E.2d 518
 
 , 522 (2009), disc. review denied,
 
 364 N.C. 436
 
 ,
 
 702 S.E.2d 492
 
 (2010). We also review alleged constitutional violations
 
 de novo
 
 .
 
 Piedmont Triad Airport Auth. v. Urbine
 
 ,
 
 354 N.C. 336
 
 , 338,
 
 554 S.E.2d 331
 
 , 332 (2001).
 

 The United States Supreme Court has determined that the monitoring of an individual under North Carolina's SBM program constitutes a continuous warrantless search of that individual.
 
 Grady v. North Carolina
 
 , --- U.S. ----,
 
 135 S. Ct. 1368
 
 , 1371,
 
 191 L.Ed.2d 459
 
 (2015). That Court did not state that monitoring an individual under the program was
 
 per se
 
 unconstitutional, recognizing that "the Fourth Amendment prohibits only
 
 unreasonable
 
 searches."
 

 Id.
 

 (emphasis in original). Rather, that Court stated that whether the enrollment of a particular individual for monitoring under the program constitutes a reasonable search "depends on the
 
 totality of the circumstances
 
 , including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations."
 

 Id.
 

 (emphasis added).
 

 The "totality of the circumstances" calculus includes whether the sexual offender poses a threat to reoffend. The calculus also includes whether an SBM search would be effective in furthering the State interest in deterring the offender from reoffending.
 
 See
 

 *751
 

 State v. Bowditch
 
 ,
 
 364 N.C. 335
 
 , 351,
 
 700 S.E.2d 1
 
 , 12 (2010) ("The SBM program is concerned with protecting the public against recidivist tendencies of convicted sex offenders.").
 

 In the present case, Defendant motioned to dismiss the State's petition to enroll him in SBM. A hearing was held on Defendant's motion. At the hearing, the only evidence presented by the State was testimony from a probation officer regarding Defendant's criminal record and the logistics and procedure of SBM, namely that SBM would track the movement of Defendant. While Defendant's status as a recidivist was not disputed, Defendant argued that the State failed to meet its burden to show that SBM was a reasonable method to reduce recidivism in his case.
 

 Indeed, preventing recidivism among sex offenders is a government interest. And while SBM is not 100% reliable to prevent recidivism, it
 
 *643
 
 certainly acts as a deterrent to further criminal conduct.
 
 See
 

 Bowditch
 
 , 364 N.C. at 351,
 
 700 S.E.2d at 12
 
 (acknowledging that the SBM program does not prevent crime but does act as a deterrent);
 
 Bare
 
 ,
 
 197 N.C. App. at 476
 
 ,
 
 677 S.E.2d at 519
 
 (stating that "SBM could have a deterrent effect. Presumably, sex offenders would be less likely to repeat offenses since they would be aware their location could be tracked and it would be easier to catch them.").
 

 Thus, it could be argued that the probation officer's testimony that SBM would track the movements of Defendant constituted
 
 some
 
 evidence that Defendant would be less likely to reoffend or to go where he should not go, since he would know that his movements were being tracked. It follows that a trial judge, making a reasonableness determination, may not need further evidence, such as empirical data or expert testimony, in a particular case to conclude that SBM would be reasonable, based on the totality of the circumstances. Indeed, we have found such deterrents, like traffic checkpoints, reasonable without the aid of expert testimony, determining that a checkpoint "deter[s] driver's license violations" and that this "deterrence goal was a reasonable one."
 
 State v. Jarrett
 
 ,
 
 203 N.C. App. 675
 
 , 679-80,
 
 692 S.E.2d 420
 
 , 425 (2010) (internal citations omitted).
 

 However, our Court has recently held that to show the efficacy of SBM in deterring recidivism, the State may never rely on an assumption that an offender would be less likely to reoffend if he knew he was being watched: the State must produce other evidence to show the efficacy of SBM in general,
 
 e.g.
 
 , empirical studies or expert testimony.
 
 See
 

 State v. Griffin
 
 , --- N.C. App. ----, ----,
 
 818 S.E.2d 336
 
 , 340-42 (2018). In
 
 Griffin
 
 , the panel relied on the decision of our Court in
 
 Grady
 
 handed down after the matter had been remanded from the United States Supreme Court,
 
 see
 

 State v. Grady
 
 , --- N.C. App. ----,
 
 817 S.E.2d 18
 
 (2018), and on the reasoning of a Fourth Circuit Court of Appeals opinion analyzing the constitutionality of an order restricting the travel of a sex offender,
 
 see
 

 Doe v. Cooper
 
 ,
 
 842 F.3d 833
 
 , 846-47 (4th Cir. 2016). While
 
 Griffin
 
 and some of its progeny are currently before our Supreme Court, the
 
 mandates
 
 of those cases have not been stayed by that Court. We are, therefore, compelled to continue following
 
 Griffin
 
 . Accordingly, we conclude that the State failed to meet its burden of showing the reasonableness of the SBM program in this case by failing to produce separate evidence concerning the efficacy of the SBM program.
 

 We note that Defendant also facially challenges the constitutionality of the SBM program. However, as we have concluded that the order
 
 *644
 
 requiring Defendant to submit to SBM was unreasonable as applied to him, we decline to address this argument.
 

 III. Conclusion
 

 As the State failed to prove the reasonableness of the SBM program as applied to Defendant, we reverse the order requiring him to submit to SBM for the remainder of his natural life.
 

 REVERSED.
 

 Judges MURPHY and HAMPSON concur.