IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-262

No. COA20-885

Filed 19 April 2022

Forsyth County, Nos. 19 CRS 55896, 56057-62

STATE OF NORTH CAROLINA

v.

MICHAEL EUGENE CARTER, Defendant.

Appeal by Defendant from order entered 11 February 2020 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 19 October 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden William Hayes, for the State.*

*Joseph P. Lattimore for Defendant-Appellant.*

INMAN, Judge.

¶ 1    Following our Supreme Court's recent decision in *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, and in light of recent amendments to North Carolina's satellite-based monitoring ("SBM") statutes, we affirm the trial court's order imposing SBM for the sex offender's life.

## I.    FACTUAL & PROCEDURAL BACKGROUND

¶ 2    The facts underlying the sex offender's convictions are undisputed:

¶ 3        Defendant-Appellant Michael Eugene Carter ("Defendant") and his partner, Elizabeth Hairston ("Ms. Hairston"), lived together with their child and Ms. Hairston's two other children from prior relationships.  At the time they were living together, Defendant was a registered sex offender based on a conviction in 2002 for solicitation to commit statutory rape.

¶ 4        In May 2014, Ms. Hairston went out of town for the weekend, leaving the children in Defendant's sole care.  While Ms. Hairston was away, Defendant lured Ms. Hairston's 12-year-old daughter, Takira,[1] to Ms. Hairston's bedroom and forced her to perform oral sex on him.  Defendant silenced Takira by telling her "no one would believe her."

¶ 5        In June 2014, Defendant again forced Takira to perform oral sex on him and digitally penetrated her vagina.  On a third occasion, Defendant forced Takira to perform oral sex on him in a closet in the home while the other children played outside.  Ms. Hairston's father saw Defendant and the child emerge from the closet and told Ms. Hairston.

¶ 6        In late October and early November 2014, Defendant was arrested for various traffic violations.  Following his release, Defendant assaulted Takira a fourth time, forcing her to perform oral sex.  Before August of 2015, Takira reported the abuse to

---

[1] We use a pseudonym to protect the identity of the child.

her mother. Ms. Hairston confronted Defendant and kicked him out of the home. She did not report the abuse to police until 2019.

In 2019, Defendant was indicted for unlawfully being at a school while a sex offender, three charges of sexual offense with a child while in a parental role, three charges of indecent liberties with a child, and four charges of first-degree sexual offense with a child below the age of thirteen. Defendant pled guilty to all charges. Pursuant to the plea agreement, the trial court consolidated the charges and sentenced Defendant to 220 to 324 months in prison on 10 February 2020.

During sentencing, the trial court announced its intent to order SBM along with related proposed factual findings. The trial court considered Defendant for SBM because he was a recidivist and had committed a sexually violent offense. After stating its proposed findings, the trial court asked the case detective to testify about Defendant's prior 2002 conviction. The State then elicited testimony from the detective about Defendant's past sex offender registration violations. The State presented no further evidence. The trial court recessed the proceeding for additional research.

The next day, after returning from recess, the trial court judge announced, "I don't know that lifetime monitoring is appropriate. What I'm considering is satellite-based monitoring as a condition to his five-year post-release supervision[.]" Defense counsel objected, asserting that a reasonableness hearing was required under *State*

*v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"). In response to defense counsel's final objection to SBM's reasonableness, the trial court said, "I don't know, given that it is not lifetime, I don't know that the reasonable Fourth Amendment concerns that from [sic] the basis of Grady, or post Grady decisions, apply." Then the trial court orally ordered "as a condition of Mr. Carter's post-release supervision, pursuant to [N.C. Gen. Stat. §] 15(a)-1368.4(b)(1), subsection (6), that he be required to enroll in satellite-based monitoring for the duration of his post-release supervision, as provided by statute."

¶ 10    In its written judgment, the trial court entered a form order titled "Judicial Findings and Order for Sex Offenders—Active Punishment," AOC-CR-615 (rev. 11/18), requiring SBM enrollment upon Defendant's release from prison for his "natural life" based on his status as a recidivist.[2] Although Defendant committed sexual offenses with a child younger than thirteen, the trial court did not check the box on the order imposing SBM indicating that fact, which is an independent basis

---

[2] Our statutes at the time mandated lifetime enrollment for recidivists. N.C. Gen. Stat. § 14-208.40A(c) (2019) ("If the court finds that the offender . . . is a recidivist, the court *shall* order the offender to enroll in a satellite-based monitoring program for life." (emphasis added)); *see also infra* 2. To the extent the trial court's oral findings conflict with its written findings, the trial court's written findings and order control on appeal. *State v. Johnson*, 246 N.C. App. 677, 684 (2016) ("Even if there is some conflict between oral findings and ones that are reduced to writing, the written order controls for purposes of appeal." (citation omitted)).

for the imposition of lifetime SBM. It is undisputed that Defendant pled guilty to and was convicted of committing sexual offenses against a child younger than thirteen.

¶ 11    The trial court entered additional written findings addressing the reasonableness of Defendant's post-release SBM and ordered further trial court review after Defendant's release to consider then-existing technology and constitutional standards:

> 1. The defendant was on the Sex-Offender Registry at the time of the present offenses and the Registry was not effective in deterring the defendant's conduct or providing for public safety;
>
> 2. The offenses for which the defendant has now been convicted occurred over many dates and over a span of time, indicating persistent child sexual criminal intent and fixation;
>
> 3. The span between the defendant's initial conviction for a child sex offense and the present series of offenses indicates a long-standing and persistent tendency and is predictive of future offenses;
>
> 4. The defendant's expectation of privacy is necessarily limited during Post-Release Supervision, and the additional Search attendant with Satellite-Based Monitoring during Supervision is reasonable under the circumstances;
>
> 5. During the commission of the present child sex offenses the defendant repeatedly went upon school property in violation of the North Carolina General Statutes, and furthermore was in the presence and care of unauthorized children in violation of the North Carolina General Statutes, and thus the Sex-Offender Registry and Statutes relating to child sex offenders were not effective in

deterring the defendant's conduct or providing for the public safety.

It is further Ordered that the defendant have a Hearing before the Superior Court after his release from the Division of Adult Correction so that the Court may determine the nature and degree that a "Search" such as Satellite-Based Monitoring will constitute under then existing technology, and therefore determine whether Satellite-Based Monitoring is constitutional under then-existing circumstances pursuant to Grady and subsequent case law.

Defendant timely appealed.

## II. ANALYSIS

### A. *Appellate Jurisdiction*

¶ 12        As an initial matter, we overrule the State's contention this issue is not ripe for our review. Although the trial court has ordered another reasonableness hearing upon Defendant's release from prison, the trial court has already imposed SBM upon Defendant. We have reviewed challenges to the reasonableness of SBM at the time it is imposed on many occasions. *See, e.g., State v. Hutchens*, 272 N.C. App. 156, 162, 846 S.E.2d 306, 312 (2020) ("Defendant's SBM order was entered at the same time as his sentence, so he will not be subject to SBM until he serves his prison term of roughly seven-and-a-half to fourteen-and-a-half years."); *State v. Gordon*, 270 N.C. App. 468, 474, 840 S.E.2d 907, 913 (2020) ("Defendant was ordered to submit to satellite-based monitoring solely due to his conviction of an aggravated offense; however, he will not actually enroll in the program for approximately 15 to 20 years,

after he has completed his active prison sentence. The State filed its satellite-based monitoring application at the time of Defendant's sentencing, in accordance with N.C. Gen. Stat. § 14-208.40A.").

### B. SBM and Fourth Amendment Reasonableness

¶ 13 Defendant asserts the trial court erred by imposing SBM because the State failed to present any evidence about the reasonableness of the monitoring and the trial court did not conduct a formal hearing on this issue. A recent decision from our Supreme Court and legislative amendments to our SBM statutes compel us to disagree.

¶ 14 Reviewing a trial court order, we consider "whether the trial judge's underlying findings of fact are supported by competent evidence, . . . and whether those factual findings in turn support the judge's ultimate conclusions of law.'" *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (quotation marks and citation omitted). We review a trial court's determination that SBM is reasonable *de novo*. *State v. Gambrell*, 265 N.C. App. 641, 642, 828 S.E.2d 749, 750 (2019) (citation omitted).

#### 1. Recent Reasonableness Precedence

¶ 15 The Supreme Court of the United States held in *Grady v. North Carolina*, 575 U.S. 306, 191 L. Ed. 2d 459 (2015) ("*Grady I*"), that the imposition of SBM constitutes a warrantless search under the Fourth Amendment and necessitates an inquiry into reasonableness under the totality of the circumstances. 575 U.S. at 310, 191 L. Ed.

2d at 462.

¶ 16        Following that holding by the Supreme Court of the United States, in *Grady III*, our Supreme Court considered whether mandatory lifetime SBM based solely on the defendant's status as a "recidivist" sex offender "is reasonable when 'its intrusion on the individual's Fourth Amendment interests' is balanced 'against its promotion of legitimate governmental interests.'"  372 N.C. at 527, 831 S.E.2d at 557 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 132 L. Ed. 2d 564, 574 (1995)). After extensive and careful balancing, our Supreme Court concluded:

> [A]pplication of the relevant portions of N.C.G.S. §§ 14-208.40A(c) and 14-208.40B(c) to individuals in the same category as defendant, under which these individuals are required to submit to a mandatory, continuous, nonconsensual search by lifetime satellite-based monitoring, violates the Fourth Amendment to the United States Constitution.  The category to which this holding applies includes only those individuals who are not on probation, parole, or post-release supervision; who are subject to lifetime SBM solely by virtue of being recidivists as defined by the statute; and who have not been classified as a sexually violent predator, convicted of an aggravated offense, or are adults convicted of statutory rape or statutory sex offense with a victim under the age of thirteen.

*Id.* at 545, 831 S.E.2d at 568.

¶ 17        This Court, in resolving an array of other SBM appeals, looked to *Grady III* for guidance as to the scope of the reasonableness analysis required by the United States Supreme Court in *Grady I.  See, e.g., State v. Gordon*, 270 N.C. App. 468, 469, 840

S.E.2d 907, 908 (2020), *remanded by* 379 N.C. 670, 865 S.E.2d 852 (2021); *State v. Griffin*, 270 N.C. App. 98, 106, 840 S.E.2d 267, 273 (2020), *remanded by* 379 N.C. 671, 865 S.E.2d 849 (2021); *Hutchens*, 272 N.C. App. at 160-61, 846 S.E.2d at 310-11. For example, the majority opinion set forth factors to be considered in determining whether SBM is reasonable under the totality of the circumstances, including an offender's "legitimate" and not "greatly diminished" privacy interests and SBM's "substantial" and "deep, if not unique, intrusion" into them, as weighed against the State's "without question legitimate" interest in monitoring sex offenders. *Grady III*, 372 N.C. at 527, 534, 538, 543-44, 831 S.E.2d at 557, 561, 564, 568.

¶ 18    Two years after *Grady III*, in *Hilton*, a case involving a defendant whose sex offenses fit the legal category of "aggravated," our Supreme Court narrowly construed *Grady III*'s holding:

> [T]his Court held the SBM program to be unconstitutional as applied to the narrow category of individuals "who are subject to mandatory lifetime SBM based solely on their status as a statutorily defined 'recidivist' who have completed their prison sentences and are no longer supervised by the State through probation, parole, or post-release supervision." *State v. Grady* (*Grady III*), 372 N.C. 509, 522, 831 S.E.2d 542, 553 (2019) (footnote omitted). Our *Grady III* decision, however, left unanswered the question of whether the SBM program is constitutional as applied to sex offenders who are in categories other than that of recidivists who are no longer under State supervision.

*State v. Hilton,* 378 N.C. 692, 2021-NCSC-115, ¶ 2.[3]   Disregarding much of the reasoning provided in *Grady III*, in *Hilton*, our Supreme Court held "the SBM statute as applied to aggravated offenders is not unconstitutional" because the "search effected by the imposition of lifetime SBM on the category of aggravated offenders is reasonable under the Fourth Amendment." *Id.* ¶ 36.[4]

¶ 19        *Hilton* does not remove the requirement of a reasonableness hearing altogether.   As in cases challenging pre-trial searches as violating the Fourth Amendment, trial courts must continue to conduct reasonableness hearings before ordering SBM unless a defendant waives his or her right to a hearing or fails to object to SBM on this basis.  *See State v. Ricks*, 378 N.C. 737, 2021-NCSC-116, ¶ 10 ("Absent an objection, the trial court was under no constitutional requirement to inquire into

---

[3] The Supreme Court has remanded several SBM decisions by this Court for reconsideration in lieu of *Hilton*'s interpretation of *Grady III*.  *See, e.g., State v. Anthony*, 379 N.C. 668, 865 S.E.2d 851 (2021) (remanding to this Court "to reconsider its holding in light of *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, 862 S.E.2d 806, and *State v. Strudwick*, 2021-NCSC-127, 864 S.E.2d 231, as well as the General Assembly's recent amendments to the satellite-based monitoring program"); *State v. Cooper*, 379 N.C. 669, 865 S.E.2d 855 (2021) (same); *State v. Gordon*, 379 N.C. 670, 865 S.E.2d 852 (2021) (same); *State v. Griffin*, 379 N.C. 671, 865 S.E.2d 849 (2021) (same); *State v. O'Kelly*, 379 N.C. 673, 865 S.E.2d 851 (2021) (same).

[4] To date, the Supreme Court and this Court have applied *Hilton*'s per se reasonableness determination to SBM orders in cases where defendants have been convicted of an aggravated offense.  *See, e.g., State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, ¶ 20 (declining to follow *Grady III* and applying *Hilton* because the defendant was convicted of an aggravated offense); *State v. McCauley*, 2022-NCCOA-80, ¶ 10 (unpublished) (affirming the imposition of satellite-based monitoring for a period of ten years following an aggravated offender's release from incarceration).

the reasonableness of imposing SBM.").

¶ 20          Since the trial court imposed lifetime SBM in this case and Defendant objected on constitutional grounds, the trial court was required to consider whether the monitoring was constitutional under the Fourth Amendment. *Grady I*, 575 U.S. at 310, 191 L. Ed. 2d at 462. Contrary to Defendant's assertion, the record reveals the trial court grappled with North Carolina's rapidly evolving jurisprudence on this issue, conducted a hearing regarding the facts and applicable law, and weighed the State's interests against Defendant's expectation of privacy. The trial court heard testimony from the State's witness about Defendant's 2002 sex offense conviction as evidence of his recidivism. It reviewed Defendant's STATIC-99 assessment, which rated Defendant an "average risk" to reoffend. It further considered how Defendant's prior sex offender registration had proved ineffective to deter his conduct or protect public safety. Finally, the trial court measured Defendant's sex offender registry violations, including repeatedly going onto school property while registered. In particular, the trial court balanced Defendant's "long-standing and persistent tendency" for sexual abuse, his disposition as a reoffender, and his sex offender registry violations, against the State's interest in protecting the public from a recidivist sex offender. Following this fact-specific analysis, the trial court concluded SBM was reasonable as applied to Defendant.

¶ 21          We now review the trial court's determination *de novo*. *Gambrell*, 265 N.C.

App. at 642, 828 S.E.2d at 750.

### 2. *Fourth Amendment Reasonableness Analysis in this Case*

¶ 22        The trial court found Defendant was a recidivist. Because Defendant is a recidivist, the trial court was required to order Defendant to "enroll in satellite-based monitoring for the duration of his post-release supervision" and the duration of his natural life. N.C. Gen. Stat. §§ 15A-1368.4(b1)(6), 14-208.40A(c) (2019) ("If the court finds that the offender . . . is a recidivist, the court *shall* order the offender to enroll in a satellite-based monitoring program for life." (emphasis added)). However, during the pendency of this appeal, our legislature amended the SBM statutes, in part, to create an avenue by which Defendant may petition a superior court to terminate his monitoring after ten years of enrollment. *An Act . . . to Address Constitutional Issues with Satellite-Based Monitoring*, S.L. 2021-138, § 18(i) ("If the petitioner has been enrolled in the satellite-based monitoring program for more than 10 years, the court *shall* order the petitioner's requirement to enroll in the satellite-based monitoring program be terminated." (emphasis added)) and S.L. 2021-182, § 2(e) (collectively to be codified at N.C. Gen. Stat. § 14-208.46). Therefore, we consider the reasonableness of Defendant's SBM within the parameters of not only recent Supreme Court precedent but also the amended statutes.

### a. *Intrusion upon Defendant's Privacy Interests*

¶ 23        An offender subject to post-release supervision has a diminished privacy

expectation. *See Samson v. California*, 547 U.S. 843, 844, 165 L. Ed. 2d 250, 254 (2006) ("An inmate electing to complete his sentence out of physical custody remains in the Department of Corrections' legal custody for the remainder of his term and must comply with the terms and conditions of his parole. The extent and reach of those conditions demonstrate that parolees have severely diminished privacy expectations by virtue of their status alone."); *Hilton*, ¶ 29 ("SBM is clearly constitutionally reasonable during a defendant's post-release supervision period."); § 15A-1368.4(b1)(6) (mandating SBM as a condition of post-release supervision for recidivists). So SBM as a condition of Defendant's 60-month period post-release supervision is constitutional. *Cf. Grady III*, 372 N.C. at 546, 831 S.E.2d at 569-70 ("Our holding is as-applied in the sense that it addresses the current implementation of the SBM program and does not enjoin all of the program's applications or even all applications of the specific statutory provision we consider here (authorizing lifetime SBM based on a finding that an individual is a recidivist) because this provision is still enforceable against a recidivist during the period of his or her State supervision[.]").

¶ 24    Our Supreme Court's decision in *Hilton* concluded that for aggravated offenders, "the imposition of lifetime SBM causes only a limited intrusion into [the] diminished privacy expectation." *Hilton*, ¶ 36. Defendant is not in the same statutorily-defined category of "aggravated offender" as the offender in *Hilton*. And

because he has not completed his prison sentence and post-release supervision period, he does not fit neatly into *Grady III*'s limited category of "recidivist"[5] not otherwise subject to State supervision in the form of imprisonment, post-release supervision, parole, or probation. *See Grady III*, 372 N.C. at 545, 831 S.E.2d at 568. Yet, because the trial court enrolled Defendant in SBM solely because of his status as a recidivist, we look to *Grady III* for guidance about the intrusion upon Defendant's privacy interests.

*Grady III* held recidivists "do not have a greatly diminished privacy interest in their bodily integrity or their daily movements merely by being also subject to the civil regulatory requirements that accompany the status of being a sex offender. The SBM program constitutes a substantial intrusion into those privacy interests . . . [.]" *Id.* at 544-45, 831 S.E.2d at 568. As in *Grady III*, lifetime monitoring of Defendant in this case constitutes a substantial intrusion into his not greatly diminished privacy interests well beyond the period of his post-release supervision. However, the opportunity to be freed from monitoring after a period of ten years renders SBM, while still serious, something less than the "substantial intrusion" identified in *Grady III*.

---

[5] Amendments to the SBM statutes also replace "recidivist" with "reoffender," defining a reoffender as, "A person who has two or more convictions for a felony that is described in G.S. 14-208.6(4)." S.L. 2021-138, § 18(b) (amending N.C. Gen. Stat. § 14-208.6 (2021)).

### b. *State's Interests in SBM*

¶ 26        Next, we consider the State's interests in monitoring Defendant.  In *Hilton*, the Supreme Court acknowledged the paramount purpose of the SBM program to protect the public from sex crimes, *Hilton*, ¶ 42, but it distinguished the State's interest in monitoring *recidivists* from its interest in monitoring *aggravated offenders*:

> [W]e opined in *Grady III* that the State's "interests [in protecting the public through SBM] are without question legitimate." *Grady III*, 372 N.C. at 543, 831 S.E.2d at 568. There, however, our analysis applied only to the recidivist category. *Id.* at 522, 831 S.E.2d at 553.  Notably, we made the following observation regarding the recidivist category:
>
>> [l]ifetime monitoring for recidivists is mandated by our statute for anyone who is convicted of two sex offenses that carry a registration requirement. A wide range of different offenses are swept into this category. For example, a court is required to impose lifetime SBM on an offender who twice attempts to solicit a teen under the age of sixteen in an online chat room to meet with him, regardless of whether the person solicited was actually a teen or an undercover officer, or whether any meeting ever happened.
>
> *Id.* at 544, 831 S.E.2d at 568.  Unlike the recidivist category, the aggravated offender category applies only to a small subset of individuals who have committed the most heinous sex crimes.

*Id.* ¶ 21.  The Court further explained, "after our decision in *Grady III*, the three categories of offenders who require continuous lifetime SBM to protect public safety

are (1) sexually violent predators, (2) aggravated offenders, and (3) adults convicted of statutory rape or a sex offense with a victim under the age of thirteen." *Id.* ¶ 23 (footnote omitted).

¶ 27    In this case, Defendant was convicted of committing sex offenses against a child under the age of thirteen. So we must follow the Supreme Court's holding in *Hilton* that he requires continuous lifetime SBM to protect public safety. *Id.*

### c. *Efficacy of SBM*

¶ 28    Relying on the same study our General Assembly included as a legislative finding in its recent amendments to the State's SBM program, the Supreme Court in *Hilton* relieved the State of its burden to demonstrate the efficacy of SBM in promoting the State's interests on an individualized basis and concluded SBM is generally effective in reducing recidivism. *Id.* ¶ 28 ("These studies demonstrate that SBM is efficacious in reducing recidivism. Since we have recognized the efficacy of SBM in assisting with the apprehension of offenders and in deterring recidivism, there is no need for the State to prove SBM's efficacy on an individualized basis.").[6]

---

[6] We note the tension between our Supreme Court's reliance on a legislative finding in *Hilton* and the Court's previous descriptions of legislative findings. *See Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 294, 749 S.E.2d 429, 433 (2012) (opining that legislative findings "have no magical quality to make valid that which is invalid" (citation omitted)); *Martin v. N.C. Hous. Corp.*, 277 N.C. 29, 44, 175 S.E.2d 665, 673 (1970) (explaining legislative findings are entitled to limited deference in determining the constitutionality of legislative amendments). *See also* Jamie Markham, UNC Sch. of Gov't, *Revisions to North Carolina's Satellite-Based Monitoring Law*, (Oct. 11, 2021) https://nccriminallaw.sog.unc.edu/revisions-to-north-carolinas-satellite-based-monitoring-law/.

¶ 29        *Hilton* compels us to conclude that the State was not required to present further evidence of the efficacy of SBM monitoring in this case "because the SBM program serves a legitimate government interest." *Id.* ¶ 29.

### d. Totality of the Circumstances

¶ 30        Considering the totality of the circumstances, we weigh SBM's serious intrusion into Defendant's not "greatly diminished privacy interest," *Grady III*, 372 N.C. at 543, 831 S.E.2d at 568, against the State's paramount interest in protecting the public through lifetime monitoring of offender's convicted of a sexual offense with a child under the age of thirteen and the declared efficacy of SBM in promoting those interests, *Hilton*, ¶¶ 23, 28, in the context of our recently amended and enacted SBM statutes. We are compelled by the Supreme Court's holding in *Hilton* to hold the search of Defendant as imposed is reasonable and therefore constitutional under the Fourth Amendment. We affirm the trial court's order in this regard.

### C. Trial Court's Authority to Order a Second Reasonableness Hearing

¶ 31        Defendant also contends the trial court was without statutory authority and jurisdiction to order Defendant to appear for a second SBM hearing after completing his prison sentence. We agree, in part.

¶ 32        Assuming *arguendo* Defendant is aggrieved by this portion of the trial court's order, our "SBM statutes do not provide for reassessment of [a] defendant's SBM eligibility based on the same reportable conviction, after the initial SBM

determination is made based on that conviction." *State v. Clayton*, 206 N.C. App. 300,

305-06, 697 S.E.2d 428, 432 (2010). Section 14-208.40A of our General Statutes

provides:

> (a) When an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), *during the sentencing phase*, the district attorney shall present to the court any evidence that (i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a reoffender, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.23 or G.S. 14-27.28, or (v) the offense involved the physical, mental, or sexual abuse of a minor.
>
> . . .
>
> (c) If the court finds that the offender has been classified as a sexually violent predator, is a reoffender, has committed an aggravated offense, or was convicted of G.S. 14-27.23 or G.S. 14-27.28, the court shall order the offender to enroll in a satellite-based monitoring program for life.

N.C. Gen. Stat. § 14-208.40A (a),(c) (2021) (emphasis added). Section 14-208.40B

provides a different mechanism for the trial court to hold an SBM hearing only when

there is no previous determination that the offender enroll in SBM. *Id.* § 14-

208.40B(a) (2021) ("When an offender is convicted of a reportable conviction as

defined by G.S. 14-208.6(4), *and there has been no determination by a court on whether*

*the offender shall be required to enroll in satellite-based monitoring . . . .*") (emphasis

added)); *see also State v. Kilby*, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432-33 (2009)

(holding Section 14-208.40B(a) "applies in cases in which the offender has been

convicted of an applicable conviction and the trial court has not previously determined whether the offender must be required to enroll in SBM").

Here, the trial court ordered Defendant enroll in SBM during the sentencing phase pursuant to Section 14-208.40A based on his reportable 10 February 2020 sex offense convictions. The trial court did not have statutory authority to require another reasonableness hearing at the end of Defendant's active sentence or make a second eligibility determination by the mechanism provided in Section 14-208.40B based on those same convictions. *Clayton*, 206 N.C. App. at 305-06, 697 S.E.2d at 432.

However, SBM is a "civil, regulatory scheme," *State v. Bowditch*, 364 N.C. 335, 352, 700 S.E.2d 1, 13 (2010), and the trial court maintains continuing jurisdiction over its civil actions. N.C. Gen. Stat. § 7A-20 (2021) ("[O]riginal general jurisdiction of all justiciable matters of a civil nature cognizable in the General Court of Justice is vested in the aggregate in the superior court division and the district court division as the trial divisions of the General Court of Justice."). The trial court also retains authority to modify its own civil judgments. *See Hilton,* ¶ 34 ("Since the SBM program is civil in nature, the North Carolina Rules of Civil Procedure govern. As such, a defendant may also seek removal of SBM[.]" (citing N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2019)). For example, as noted above, the legislature has created an avenue by which an offender who has been enrolled in SBM for a period of more than

ten years may petition the superior court to have their monitoring terminated. S.L. 2021-138, § 18(i) and 2021-182 § 2(e) (to be codified at § 14-208.46).

We vacate the portion of the trial court's order requiring a second reasonableness hearing after Defendant's release. Our holding does not otherwise affect the trial court's continuing authority to amend or modify its own orders or Defendant's ability to petition the trial court for modification or termination pursuant to our statutes.

### III.    CONCLUSION

For the reasons set forth above, we affirm the trial court's SBM order in part and vacate the portion which orders a second SBM hearing after Defendant's release.

AFFIRMED IN PART; VACATED IN PART.

Chief Judge STROUD and Judge GORE concur.